Murray SEASONGOOD, Sole Surviving Executor of the Estate of Cora S. Stern, Deceased, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 7527.

United States District Court, S. D. Ohio, W. D.

March 1, 1971.

Murray Seasongood, Cincinnati, Ohio, for plaintiff.

Stephen T. Lyons, Tax Div., Dept. of Justice, Washington, D. C., for defendant.

## DECISION ON CROSS–MOTIONS FOR PARTIAL SUMMARY JUDGMENT

HOGAN, District Judge.

Ever since the verb "requaer" was coined in the now dead Latin language, its meaning—and the meaning of its derivatives—has been completely evasive, lacking context. Hence this case.

This is an estate tax refund case involving the estate of one Cora S. Stern. She died a resident of New York in 1965 at the age of 96. Her gross estate, being administered in the New York Surrogate's Court, amounted to approximately one-half million dollars, on which an estate tax of approximately $100,000 was paid. Reported in the estate tax return, but not included in the estate, was property having a value of approximately $150,000.00 at the date of her death,

which represented one-half of the value of a Trust A provided for in a trust instrument entered into by her as settlor in 1929. Upon an examination of her return, the Director included this reported one-half interest in her estate. An additional tax of approximately $43,000.00 was thereupon paid and thereafter, upon the usual refund, etc. administrative proceeding, this refund case was filed. The case as filed also involves some deduction for attorney's fee problems not presented on the cross-motion for partial summary judgment. The sole question presented is the includability of the value of one-half of Trust A.

Mrs. Stern lived in Cincinnati until the death of her husband in about 1919. Shortly after his death she returned to her original residence—New York—and remained a New York resident until her death. Her inheritance from her husband's estate consisted of a life tenancy in a testimentary trust, the principal of which amount to approximately $300,-000.00 both at the date of her husband's death and in 1929. In early 1929 she owned, in addition to the properties involved in the trust which she settled early in 1929, property having a value of approximately one-half million dollars. (Her wealth was largely attributable to inheritances from her parents.) In early 1929 she was 60 years old, was a widow, had one son who subsequently died in 1962 being survived by a widow and two daughters. The two grandchildren were young children in 1929. The settlor of the trust, Mrs. Stern, had deep roots in Cincinnati. The sole surviving co-executor of her estate is a very prominent Cincinnatian and a partner of his, also a very prominent Cincinnati lawyer, drafted the 1929 trust. While it bears date of February 7, it actually was not executed and delivered by the trustee until March 13, 1929.

The trust instrument as tendered and as executed by the settlor contained two trusts—A and B. The property transferred into the respective trust was separately described on attached exhibits.

Trust A made these provisions generally:

The income to the Settlor during her life; on her death to her son, if living; if the son predeceased leaving a widow and children, half to the widow, half to the children; if no widow, the entire to the children and vice versa; if leaving neither widow nor children, then in equal shares to the brothers and sisters of the Settlor's late husband or the children of such who may have predeceased.

The trust then carefully named, by name and address, the then living brothers and sisters of her late husband and the then living children of deceased brothers and sisters.

Turning to Trust B—the provisions generally were:

For a life income to her son; on his death leaving neither widow nor children the remainder to the Settlor, if she survives.

Alternates, not relating to the question at hand, were provided for and then there was an "in any event" provision for the properties in either or both of the trusts if there should eventuate a failure under the specific designations.

Returning to Trust A and to the "requaer." The exact language of Trust A involved here is as follows:

"The net income therefrom shall be paid to the Grantor during her life, in quarterly installments; provided, however, that there shall be paid to her, at her request, at any time, such portions of the principal as she may require from time to time during her life, the aggregate of which shall not exceed one-half of said Trust."

The Trustee, "The National City Bank of New York"—unquestionably an independent trustee—thought it advisable to obtain some construction of the "requaer" provision before executing the instrument. For at least two reasons it addressed its inquiry to the grantor's agent in the matter—her counsel. One reason is obvious. The other was related to this provision of the trust indenture:

"The trusts hereby created shall be interpreted according to the laws of the State of Ohio relating to wills. In case of any question as to their interpretation or as to the duties of the Trustee hereunder, it may apply to an Ohio attorney of its own selection, and be governed by his written opinion given to it, as to the interpretation of this instrument under Ohio law, or as to its duties hereunder, and it shall not be liable for any action taken pursuant to such opinion, and such attorney shall not be liable to the Trustee or any of the beneficiaires of this trust for any honest mistake."

What was bothering the trustee, as appears from its letter of February 27, 1929, was "How do you determine this one-half?" The trustee wrote, "As we construe this provision (being the "requaer" provision quoted verbatim above) it will not permit Mrs. Stern's withdrawing more than an amount equal to one-half of the present value of the securities now listed in the schedule, as constituting Fund A, less depreciation, if any."

On March 5, the Settlor, through her agent, wrote the Trustee and had this to say:

"As to the proviso in paragraph 1 in the agreement, quoted in your letter, we think its construction is academic as Mrs. Stern does not require any of the principal of Trust A and most probably will never require any during her lifetime. It is not her intention at the present time to request that any of it be paid to her. If, however, she should at any time require it, we are perfectly satisfied to adopt the construction which you have put on it."

To state the problem in legal nicety would involve extensive references to a number of statutes and regs. The statutes involved would be 2038 and 2041 of the Internal Revenue Code and Reg. 20.-2038–1.

The parties to this case have tendered the question in a simplistic form, which this Court gladly accepts. Both in brief and in oral argument it is put this way:

As a part of Trust A, Mrs. Stern did have a "power to invade" up to fifty percent; the question is whether that power was or was not one to alter, amend or revoke up to fifty percent. If her power was limited by an ascertainable standard, it was not a power to alter, amend or revoke; furthermore, it narrows down to whether the "requaer" in Trust A means "request" or "demand" on the one hand or "need" on the other hand; further, if it meant "need," the parties to this case, both on brief and in oral argument, do not differ in respect of this:

> "Need" is short for "that which may be necessary to suitably maintain me in as much comfort as I now enjoy."

See Ithaca Trust Co. v. United States, 279 U.S. 151, 154, 49 S.Ct. 291, 73 L.Ed. 647 (1929).

■ The basic question is one of degree: At what point does a power reserved to a settlor or beneficiary become a power to "alter, amend or revoke?" It may and does arise in different contexts, e. g., in cases directly involving 26 U.S.C. § 2041(b) dealing with a power of appointment; in cases under the marital deduction provisions; in cases under 26 U.S.C. § 2038; in cases involving 26 U.S.C. § 2055 (charitable deductions), etc. The applicable law, as well as the approaches are well set forth in Michigan Trust Co. v. Kavanagh, 284 F.2d 502 (6th Cir. 1960); Peoples Trust Co. of Bergen County v. United States, 412 F.2d 1156 (3rd 1969) and Estate of Stewart v. Commissioner of Internal Revenue, 436 F.2d 1281 (3rd Cir. 1971). In a nutshell—

> " * * * if the donor retains a power to invade corpus, but the power is limited by a determinable external standard, enforceable in a court of equity, then the power is not a power to alter, amend or revoke." (284 F.2d 505.)

> " * * * a donor who keeps so strong a hold over the actual or immediate enjoyment of what he puts beyond his own power to retake has not divested himself of that degree of control which [the statute] requires in order to avoid the tax." (Id.)

Reference is made generally to those cases and no further elaboration will be made. As the Third Circuit said in *Peoples Trust,* supra:

> " 'Require' has been viewed in the context in which it was used and an effort made in each instance to interpret its meaning in light of the instrument as a whole."

■ In the view of this Court the "require" as used in this case meant "needs." The reasons are as follows:

A) That conclusion is indicated within the four corners of the trust instrument itself. That is to say, if the answer one way or another must come from within the four corners, the content within the four corners of this instrument so indicates. Sometimes the meaning of a word is ascertainable by the choice of it vis-a-vis the available alternates. The available alternates to "require" in this instrument that readily come to mind are these: "Request" or "demand" or "direct" or "needs." The drafter of this instrument and the settlor, within the space of three lines, used two of these words: "request" and "require." The government in this case would have us conclude that the differentiation was happenstance. We think not. A construer must assume that words used are used for some purpose. This trust would have meant exactly what the government contends it means if the language had been: "However, there shall be paid to her at her request at any time portions of the principal of Trust A, the aggregate of which shall not exceed one-half thereof." The settlor did not say that. On the contrary, she said, "There shall be paid to her at her request at any time *such* portions of the principal of Trust

A *as she may require* from time to time during her life, the aggregate of which shall not exceed one-half thereof." The italicized words have absolutely no meaning unless the meaning was "need." Furthermore, the settlor in Trust A dealt meticulously with the remainder interest and meticulously dealt herself out of any possibility of succeeding to the remainder interest. While this Court would respectfully disagree with the conclusion of the Court in Pittsfield National Bank v. United States, 181 F.Supp. 851 (D.C.Mass., 1960) [because of the difference in the interpretation of "need" by the decision maker]; it does agree with this comment in *Pittsfield*:

"It is quite apparent that Mrs. Colt intended principally to provide for the remaindermen and to give her husband a power of invasion only in the unlikely event that he should need any part of the principal without subjecting the property again to taxation."

Conceding, as one must, that "require" requires construction in its context (and if there be any doubt of that see *Peoples Trust*, 412 F.2d at pages 1160, et seq.) and even assuming that the construer may look only to the context, i. e., the instrument itself, it would be the conclusion of this Court that the context here requires that "require" be construed as "need." Since "need" is conceded on this record to set forth an "ascertainable standard," that alone would require the granting of the plaintiff's motion for partial summary judgment.

■ B) However, there are other reasons which buttress that conclusion and it would be well to enumerate them. The letter exchange to which we have referred, which antedated the execution of the instrument by the trustee, is significant for more reasons than one. While it is the position of the government that this letter exchange is irrelevant since the search is limited to the "four corners," this

Court cannot agree. The so-called "limitation" language in the decided cases either was used in passing (see *Michigan Trust*, supra) or was used in an entirely different factual situation. A written exchange between two parties to a contract, antedating its execution and dealing with and setting forth an agreement on the meaning of language in the document certainly does not violate the parole evidence rule—nor is it swallowed up in any merger. On the contrary, it is an important "circumstance" at least surrounding the execution of the agreement. One significance of this letter exchange is that it expressly relates "require" to the economic situation or the "need" of Mrs. Stern. Another significance is that the exchange carefully, once again, differentiates between "require" and "request." There was certainly no need to do that if "require" meant "direct" or "demand." As stated in the letter exchange by the settlor's agent dealing with the pertinent portion of the trust,

"* * * its construction is academic as the settlor does not require any of the principal of Trust A and most probably will never require any during her lifetime. It is not her intention at the present time to request that any of it be paid to her. If, however, she should at any time require it, etc."

This is a careful choice of language. The language was not: "If, however, she should at any time request it, or demand it, or direct its payment."

■ The letter exchange is further significant in this connection: It evidenced the trustee's concern with its recognized duties not only toward the settlor, but also to the settlor as a beneficiary and to the other beneficiaries of the trust. As an independent trustee, the bank did not want to become involved with the problem that would have arisen had Mrs. Stern required more than half the value of

Trust A at a time when it was worth double its initial value. In this the trustee acted, of course, in accordance with both New York and Ohio law. Under the law of either state, a trustee owes a duty of equal loyalty to all the beneficiaries. See Ford, 53 T.C. 114, 125 at 127, (1969); Allison v. Allison, 15 Ohio St.2d 44, 238 N.E.2d 768 (1968); Restatements of Trusts, 2nd, page 393, Section 183.

To say the least, with respect to Trust A, the settlor placed between herself and control over the principal an independent trustee and, to say the very least, an ambiguous word. Cf. Morgan v. Commissioner, 309 U.S. 78, 60 S.Ct. 424, 84 L.Ed. 585 and *Michigan Trust,* supra.

C) The applicability of state law to a question such as this is not crystal clear. Certainly a construction by a state court of the particular instrument involved in a collateral proceeding is not determinative since the "question involved is whether a statutory standard laid down by the Internal Revenue Code has been met. This is a federal question which a state court is without power to decide," [etc.] (*Michigan Trust,* supra.) On the other hand, as stated in *Peoples Trust,* "We start with the proposition that while the taxability of the interest possessed by decedent is to be determined by federal law, we must look to the local law—here New Jersey's— to determine the legal rights and interests possessed by decedent under the trust \* \* \*." In this case the local law would be the law of Ohio because of the provisions of the trust itself. It would, however, make no difference whether it was Ohio law or New York law which applied. It is the generally accepted rule that an ambiguous provision in a trust will be construed in favor of the beneficiaries and against the settlor. For example, Brenneman v. Bennett, 420 F.2d 19 (8th Cir. 1970); 90 C.J.S. Trusts § 161e.

In reaching the conclusion indicated, this Court has attached no import to some "circumstances" urged as relevant. In such "circumstances" are included the fact that the settlor, Mrs. Stern, never required, nor did she ever request; the fact that there was little likelihood in 1929 that a widow, age 60, owning approximately one-half million dollars worth of property and being the life tenant of other properties having a value of something in the neighborhood of $500,000.00 would ever have "needed" to invade additional principal; the fact that in the 40's there was some additional correspondence between the trustee and the settlor. Estate tax questions involving the degree of reservation of control or the degree of parting with control must be decided on the possibilities within the language of the instrument involved (including contemporaneous, written construction) and not on the probabilities. The question in its context here is simply: Was the power, however improbable its use, limited by a determinable external standard enforceable in the courts? It is the conclusion of this Court that the provisions of Trust A did limit the settlor's power by such a standard.

Accordingly, the plaintiff's motion for a partial summary judgment relating to that part of the plaintiff's complaint which claims a recovery for the taxes paid on account of the trust described above is granted.

This is not a judgment, since there are undetermined issues in this case and this Court reserves jurisdiction of this cause until such time as those issues are disposed of.