ESTATE OF T. BUFORD NICHOLSON, DECEASED, WILLIAM B. NICHOLSON, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3635-88.     Filed April 30, 1990.

*R. Clay Hoblit,* for the petitioner.
*William R. Leighton,* for the respondent.

GERBER, *Judge:* By notice of deficiency dated December 1, 1987, respondent determined a deficiency in estate taxes in the amount of $353,537.26. The issue for consideration is whether an interest in a trust created by the decedent qualifies for the estate tax marital deduction as qualified terminable interest property, within the meaning of section 2056(b)(7).[1]

### FINDINGS OF FACT

The parties entered into a stipulation of facts, with attached exhibits, all of which are incorporated by this reference. At the time the petition in this case was filed, William B. Nicholson, executor of the Estate of T. Buford

---

[1] All section references are to the Internal Revenue Code of 1954 as amended and in effect for the date of the decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Nicholson, maintained his business address in Corpus Christi, Texas.

In 1975, the decedent T. Buford Nicholson was 63 years old; he was engaged in ranching and tending to his numerous investments. His son, William Nicholson, had recently joined him as a business associate. William assisted his father in trading properties, engineering, legal, and sales matters, and generally in "helping him try to get everything organized in the manner that he wanted it organized."

By 1975, the decedent had become concerned about providing a source of income to his wife, Dorothy Nell Nicholson, in the event he should predecease her. Although the decedent and his wife possessed many of their assets as community property, he wished to spare her the concerns of providing for herself, because she was not familiar with his business operations, nor with business dealings in general. The decedent knew that the assets he and his wife then owned did not generate a sufficient income to support her in her usual standard of living. He accordingly wanted to assure that, if he died, those assets could be sold to provide her with a means of support in the manner to which she was accustomed. The decedent chose to use a trust to carry out his intentions because he thought that the sale of assets could be performed most readily if they were held by a trust. The decedent had used a trust as a means to hold property on at least one other occasion; in 1972 he established trusts for the benefit of his two children, William Buford Nicholson and Sally Lynn Miller.

The decedent executed his last will and testament on December 30, 1975. Paragraph III of the will provides as follows:

I hereby give, devise and bequeath all of my property of whatsoever nature, kind or character, whether real, personal or mixed, of which I may die seized or possessed, or to which I may then or at any time thereafter be entitled, to the DOROTHY NELL AND BUFORD NICHOLSON TRUST, as evidenced by the instrument in writing dated the 30th day of December, 1975, and recorded in Volume 1556, at Page 19, of the Deed Records of Nueces County, Texas.

As indicated in the will, the decedent and his wife on December 30, 1975, created the "Dorothy Nell and Buford Nicholson Trust," naming their children, William B.

Nicholson and Sally Lynn Nicholson Miller, as trustees. The trust instrument provides, under the heading "Provisions for Irrevocable Trust":

1. In the event that Buford Nicholson should die or become legally or physically incompetent to administer this Trust or upon the death of Dorothy Nell Nicholson, this Trust shall then at such time become irrevocable and thereafter neither Dorothy Nell Nicholson nor Buford Nicholson will have the right to withdraw property from the Trust estate, or to alter the terms of this Trust. * * *

2. In administering their Irrevocable Trust, the Trustee or Trustees shall hold, manage and control the property comprising the Trust estate, collect the income therefrom, and *shall disburse so much of the net income therefrom to Buford Nicholson and Dorothy Nell Nicholson, or the survivor of them, as they may from time to time require to maintain their usual and customary standard of living,* and in this regard *the Trustees may also invade the corpus of the Trust for these purposes.*

3. The trustees herein named shall not be required to post bond. *Said Trustees shall have all rights and powers given to Trustees under the Texas Trust Act, as amended, and shall also have full and complete independent authority to invest, sell, assign, transfer, trade, mortgage, lease or otherwise deal with the property of this Trust as they may deem to be in the best interests of Dorothy Nell Nicholson and Buford Nicholson.*

[Emphasis supplied.]

The trust was to terminate upon the death of the last survivor of the decedent and his wife. At that time, "the Trustee or Trustees shall then distribute the Trust estate to SALLY LYNN NICHOLSON MILLER and WILLIAM B. NICHOLSON, equally, share and share alike."

After it was drafted, the decedent showed the trust instrument to his accountant. The decedent was not concerned with creating the maximum possible estate tax deduction. He sought assurance, however, that the trust would provide financial security for his wife, that it would free her from the worries of administering the estate assets, and, finally, that it "would not create a tax problem."

Once he had executed the trust instrument, the decedent did not seek to have the trust modified. The decedent later speculated that in order to raise cash, the trustees would probably have to sell his ranch, his "pride and joy," because "it was a drain rather than a benefitting asset." The ranch had a value of $564,446 at the date of decedent's death.

The decedent died on August 24, 1983. The community property assets on that date had the following values:

| | |
|---|---:|
| Real estate | $906,066 |
| Mortgages, notes, and cash | [2]821,386 |
| Insurance | 83,088 |
| Miscellaneous | 257,111 |
| Total | 2,067,651 |

These assets included several hundred acres of ranch land, royalty interests in oil and gas wells, interest-bearing notes, and a 15-percent interest, worth approximately $180,000, in a real estate limited partnership.

Following the decedent's death, a representative of the accounting firm hired to prepare the estate's inventories commented to William Nicholson that the trust, as drafted, would not qualify for the estate tax marital deduction. William Nicholson accordingly went to the attorneys who had drafted the trust document. Those attorneys prepared a petition in State court, seeking to change the trust document. Respondent was not a party to this State court proceeding. On October 31, 1984, the District Court, 117th Judicial District, Nueces County, Texas, entered an order of modification of the Dorothy Nell and Buford Nicholson Trust. The order provides, in pertinent part:

* * * an order of modification * * * would be in keeping with the intent of the settlors when the Trust was created * * * .

A modification of the Dorothy Nell and Buford Nicholson Trust is hereby ORDERED so that paragraph 2 under "Provisions for Irrevocable Trust" will read as follows:

"2. The Trustees shall collect the income from the property comprising the Trust estate and, commencing as of the date of the death of Buford Nicholson and continuing for the life of Dorothy Nell Nicholson, shall pay the net income of the Trust estate to Dorothy Nell Nicholson in quarterly or more frequent installments. Upon the death of Dorothy Nell Nicholson, any income received or accrued by the Trust prior to the time of her death and not paid to her shall be paid to her personal representative as a part of her probate estate. During the lifetime of Dorothy Nell Nicholson, the Trustees shall make no distributions of income or principal to any person other than Dorothy Nell Nicholson. In addition to the distribution of income from the Trust properties, the

---

[2]This item reflects the inclusion of two notes, known as the Padre Island note and the Kellin note, that have irregular payment histories. The values ascribed to these notes reflect the discounts from face value stipulated by the parties. Additionally, in view of their irregular payment histories, the values we ascribe to those notes do not include accrued interest.

Trustees may pay to Dorothy Nell Nicholson such part of the principal as, in the discretion of the Trustees, may be necessary to provide for her health and support and to maintain her in her usual and customary standard of living.

The Executor of the Estate of Buford Nicholson, in his sole and absolute discretion, shall determine whether to elect under Sec. 2056(b)(7) of the Internal Revenue Code of the United States to qualify any portion of the Dorothy Nell and Buford [Nicholson] Trust for the federal estate tax marital deduction."

The decedent's son, William Nicholson, as executor, timely filed a United States Estate Tax Return, Form 706, with the Internal Revenue Service Center in Austin, Texas. On that return, he elected to claim a "marital deduction for an otherwise nondeductible interest" under Code section 2056(b)(7) in an amount representing the value of the assets in the trust.

As trustee, William Nicholson has administered the trust since his father's death with the acquiescence of his sister, Sally Lynn Miller. During that time, as trustee, he has sold three trust properties located in Zapata County, Texas, for a total gain of $20,000. He has repossessed property securing a note that formed a part of the estate assets, now valued by the parties at $263,571, and he has attempted to negotiate a settlement regarding another note, made payable to the estate in the face amount of $135,000, and now valued by the parties at $114,231.

All of the income and some of the principal of the trust have been used to provide support for the decedent's wife, Dorothy Nell Buford, in accordance with the terms of the trust. Since her husband's death, the annual housing, medical, and other expenses of Mrs. Nicholson ranged between $50,000 and $60,000. At the time of trial in this case, she was 75 years old.

Respondent, in his notice of deficiency, determined that none of the trust assets, except for some $3,250 in insurance proceeds, qualified for the estate tax marital deduction. During the pendency of this proceeding, the parties also disagreed about the value of some of the properties in the trust corpus. Those valuation disputes, however, have been resolved, as reflected in the parties' stipulations and in these findings.

## OPINION

The decedent died testate in 1983. His will provided that his share of community property was to be distributed to an existing inter vivos trust. The trustees were directed to pay the income of the trust to the decedent's surviving spouse "as * * * [she] may from time to time require to maintain * * * [her] usual and customary standard of living." Additionally, "in this regard the Trustees may also invade the corpus of the Trust for these purposes." The decedent further granted the trustees "full and complete independent authority to invest, sell, assign, transfer, trade, mortgage, lease or otherwise deal with the property of this Trust as they may deem to be in the best interests of Dorothy Nell Nicholson."

In 1984, the trustees and beneficiary of the trust sought and obtained an "Order of Modification" from a Texas State court. Pursuant to that order, the trust instrument was changed to provide that, at the decedent's death, the trustees were to "pay the net income of the Trust estate to * * * [decedent's wife] in quarterly or more frequent installments."

We must decide whether, at the time of the decedent's death, his wife's interest in the trust qualified for an estate tax marital deduction as "qualified terminable interest property," within the meaning of section 2056(b)(7).

Section 2001 imposes a tax on the transfer of the taxable estate of all decedents who are citizens or residents of the United States. The amount of the tax is determined, in part, by the value of the taxable estate. Sec. 2001(b). Section 2051 defines the value of the taxable estate as the gross estate less deductions. Under section 2056(a), the estate may claim, as a marital deduction, the value of property passing to the surviving spouse. As a general rule, a marital deduction is denied, however, for a "terminable interest." That, generally, is a property interest which will terminate or fail "on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur." Sec. 2056(b)(1). Thus, an interest in the nature of a life estate is ineligible for the marital deduction. See *Estate of Higgins v. Commissioner,* 91 T.C. 61, 66 (1988), affd. 897 F.2d 856 (6th Cir. 1990), citing

*Dougherty v. United States,* 292 F.2d 331, 337 (6th Cir. 1961).

The Economic Recovery Tax Act of 1981 (ERTA), Pub. L. 97-34, 95 Stat. 172, modified the terminable interest concept. ERTA added section 2056(b)(7) to the Code to allow a marital deduction for "qualified terminable interest property," or QTIP interests. QTIP interests are those in which a decedent passes to the surviving spouse a "qualifying income interest for life." Generally, when the surviving spouse has a "qualifying income interest for life" she is entitled to "all the income from the property, payable annually or at more frequent intervals," and, while she is alive, no one else can appoint any part of the property to anyone but her. Sec. 2056(b)(7)(B).[3]

The legislative history underlying the QTIP provisions indicates that a QTIP interest must meet the requirements of section 20.2056(b)-5(f), Estate Tax Regs. See H. Rept. 97-201 (1981), 1981-2 C.B. 352, 378; *Estate of Howard v. Commissioner,* 91 T.C. 329, 335 (1988). Under that regulation, a surviving spouse is entitled to "all the income from the property" if she has the equivalent "beneficial enjoyment" of the trust estate as one who is "unqualifiedly designated as the life beneficiary." Generally, absent indications to the contrary, the "designation of the spouse as sole income beneficiary for life * * * will be sufficient." Sec. 20.2056(b)-5(f)(1), Estate Tax Regs.

A determination of the nature of the interest which passes to the surviving spouse is made under the law of the

---

[3]Sec. 2056(b)(7)(B) provides, in pertinent part:

(B) * * * For purposes of this paragraph—
    (i) IN GENERAL.—The term "qualified terminable interest property" means property—
    (I) which passes from the decedent,
    (II) in which the surviving spouse has a qualifying income interest for life, and
    (III) to which an election under this paragraph applies.
    (ii) QUALIFYING INCOME INTEREST FOR LIFE.—The surviving spouse has a qualifying income interest for life if—
    (I) the surviving spouse is entitled to all the income from the property, payable annually or at more frequent intervals, and
    (II) no person has a power to appoint any part of the property to any person other than the surviving spouse.

           *      *      *      *      *      *      *

    (v) ELECTION.—An election under this paragraph with respect to any property shall be made by the executor on the return of tax imposed by section 2001. Such an election, once made, shall be irrevocable.

jurisdiction under which the interest passes. *Estate of Bowling v. Commissioner,* 93 T.C. 286, 293 (1989); *Estate of Holland v. Commissioner,* 64 T.C. 499, 503 (1975). Here, we look to the law of Texas. Under that law, the issue of whether a beneficiary is entitled to a particular interest in the trust estate depends upon the intention of the settlor. The settlor's intention as it existed at the time the trust was created is determinative. *Cutrer v. Cutrer,* 162 Tex. 166, 345 S.W.2d 513, 519 (1961); *Vaughn v. Vaughn,* 161 Tex. 104, 337 S.W.2d 793 (1960). Accordingly, the Texas courts will not "ascertain that intention by looking to the provisions of statutes enacted after the trust instruments became effective." *Cutrer v. Cutrer, supra.*

The intention of the settlor must be determined from the language of the instrument and the circumstances surrounding its execution. In this regard,

Utterances of the parties tending to show their association of words and external objects may be considered as part of the surrounding circumstances, but statements of subjective intent or will dealing with the subject of the specific document are ordinarily not admissible. The reason for this rule of exclusion is that "when a transaction has been voluntarily embodied in single [sic] document, no other expression of intent or will on the same subject can be given jural effect." [*Cutrer v. Cutrer, supra,* 345 S.W.2d at 519.]

While we will look to local law in order to determine the nature of the interests provided under a trust document, we are not bound to give effect to a local court order which modifies that document after respondent has acquired rights to tax revenues under its terms. *American Nurseryman Publishing Co. v. Commissioner,* 75 T.C. 271, 275 (1980); *Estate of Hill v. Commissioner,* 64 T.C. 867, 875-876 (1975), affd. in an unpublished opinion 568 F.2d 1365 (5th Cir. 1978); *M.T. Straight Trust v. Commissioner,* 24 T.C. 69, 74 (1955), affd. 245 F.2d 327 (8th Cir. 1957). *Loggie v. Thomas,* 152 F.2d 636 (5th Cir. 1945); and see *Harris v. Commissioner,* 461 F.2d 554, 556 n. 2 (5th Cir. 1972), affg. a Memorandum Opinion of this Court. "[N]ot even judicial reformation can operate to change the federal tax consequences of a completed transaction." *Van Den Wymelenberg v. United States,* 397 F.2d 443, 445 (7th Cir. 1968), cert. denied 393 U.S. 953 (1968). The reformation of

an instrument has retroactive effect as between the parties to the instrument, but not as to third parties who previously acquired rights under the instrument. *American Nurseryman Publishing Co. v. Commissioner, supra* at 276; *M.T. Straight Trust v. Commissioner,* 24 T.C. at 74; see secs. 2031, 2056, and 6324. As the Court of Appeals explained in *Van Den Wymelenberg v. United States, supra* at 445—

As to the parties to the reformed instrument. the reformation relates back to the date of the original instrument, but it does not affect the rights acquired by non-parties, including the Government. Were the law otherwise there would exist considerable opportunity for "collusive" state court actions having the sole purpose of reducing federal tax liabilities. Furthermore, federal tax liabilities would remain unsettled for years after their assessment if state courts and private persons were empowered to retroactively affect the tax consequences of completed transactions and completed tax years.

Under the terms of the trust at issue, the decedent's wife is not "entitled to all the income from the property, payable annually or at more frequent intervals" as is required by section 2056(b)(7). Instead, the unambiguous language of the trust only allows her "so much of the net income * * * as * * * [she] may from time to time require to maintain * * * [her] usual and customary standard of living." See *Ithaca Trust Co. v. United States,* 279 U.S. 151, 154 (1929).

In the context of the trust instrument at issue, the provision for "so much of the net income * * * as * * * [she] may from time to time require" gives Mrs. Nicholson only such income as she may reasonably *need,* but not necessarily all the income that she may *demand.* See *Seasongood v. United States,* 331 F. Supp. 486, 488 (S.D. Ohio 1971); *In re Martin's Will,* 265 N.Y. 305, 313, 199 N.E. 491, 494 (1936). The trust instrument reveals clearly the decedent's intention that his children, as trustees, were to determine, and provide, the amounts Mrs. Nicholson required to maintain her "usual and customary" standard of living. As long as they carried out their duties, Mrs. Nicholson had neither the obligation, nor the right, to

demand "all the income," or any particular amount of income, from the trust.[4]

Consideration of the trust document as a whole reveals no internal inconsistencies with limiting Mrs. Nicholson's income to that which she "may from time to time require." To be sure, nowhere in that document did the decedent make specific provision for the disposition of income in excess of his wife's requirements. That failure, however, does not establish his intention that there would be no excess income. Instead, the trust instrument provides that, when both the decedent and his wife have died, "this irrevocable Trust shall then terminate, and the Trustee or Trustees shall then distribute the Trust estate to SALLY LYNN NICHOLSON MILLER and WILLIAM B. NICHOLSON, equally, share and share alike." This bequest of the remainder interest, unlike the support bequest for Mrs. Nicholson, makes no distinction between trust corpus and trust income. It is therefore clear that the decedent intended a gift of both the corpus component and the undistributed income component of "the Trust estate" to his children after his wife died.

We are aware that respondent's regulations provide a broad scope for interpreting a trust instrument. Those provisions, however, do not permit us to rewrite the trust instrument. The instrument here, as executed by the decedent, and as in existence at the time of his death, fails to establish that Mrs. Nicholson is "unqualifiedly designated as the life beneficiary." Nor does it otherwise designate her as "sole income beneficiary for life." Sec. 20.2056(b)-5(f), Estate Tax Regs. It instead limits Mrs. Nicholson's trust income to amounts she would "require." Any excess would go to the remaindermen. Plainly, then, under the trust instrument at issue, Mrs. Nicholson is not "entitled to all the income" from the property within the meaning of section 2056(b)(7)(B)(ii), and her interest in the trust fails to qualify for the marital deduction.[5]

---

[4]Although Mrs. Nicholson is a settlor of the inter vivos trust of which she is now a beneficiary, there is no suggestion that she had any meaningful role in its creation. The evidence instead shows that her husband alone was responsible for establishing the trust. Accordingly, our inquiries are directed only to his intentions.

[5]Under the trust instrument, if Mrs. Nicholson predeceases her children, they, as remaindermen, may receive trust income that was accumulated for her, but not yet distributed to her. This possibility further shows that she is not "entitled to all the income" from the

Petitioner, however, urges that the language of the trust document is ambiguous. It is contended that we must therefore look to the circumstances surrounding the establishment of the trust to determine the decedent's intent. Petitioner then points to the decedent's awareness that the trust assets, at the date of his death, would not generate sufficient income to support Mrs. Nicholson in the manner to which she was accustomed. Petitioner concludes that the decedent must have intended that his wife would receive "all the income" from the trust, plus some amount from the invasion of the corpus. In support of these contentions, petitioner relies heavily upon the Court of Appeals' decision in *Estate of Mittleman v. Commissioner*, 522 F.2d 132 (D.C. Cir. 1975), revg. a Memorandum Opinion of this Court.

Even if petitioner were correct, and we were permitted to look at the circumstances surrounding the execution of the trust, those circumstances do not compel a finding that the decedent "entitled" his wife to all the income from the trust. The extrinsic evidence shows instead that the decedent wished only to provide support to his wife in the manner to which she was accustomed. He especially wished to spare her the concerns of providing for herself, because she was not familiar with business operations. A bequest of all the potential trust income would have been inconsistent with this intention.

Additional extrinsic evidence shows that the decedent's grant of "so much of the net income * * * as [she] may from time to time require" was, in effect, a bequest of some $50,000 to $60,000 annually. That bequest, however, does not constitute an automatic entitlement to all the trust income. Although the trust as originally constituted did not generate that amount of income, it easily could have yielded more than that amount. The value of the trust principal at the decedent's death amounted to more than $1 million. If these assets were converted to income-producing assets in this amount, a return on the trust principal of 6 percent or more would surpass the amount needed to maintain Mrs. Nicholson's "usual and customary standard of living." In

trust. See *Estate of Howard v. Commissioner*, 91 T.C. 329, 335-337 (1988), and its discussion of sec. 20.2056(b)-7(c)(1), Proposed Estate Tax Regs., 49 Fed. Reg. 21,351 (1984).

other words, such a return would generate more trust income than that to which she was entitled.[6]

Moreover, Mrs. Nicholson was entitled to only so much of the trust's income as she may "from time to time" require to maintain her usual and customary standard of living. The implication of this language is that Mrs. Nicholson's requirements for income from the trust were to be evaluated in light of income from other sources that she might have—such as, perhaps, her share of the community property assets. The availability of income from such other sources would lower the amount of trust income that she might otherwise need, again indicating that she was not "entitled to all the income" from the trust.

The extrinsic evidence further shows that the trustees, consistent with the settlor's intent, might well have managed the trust in a way that would generate more income than the sole beneficiary needed to maintain her standard of living. Reinvestment in income-producing property was a very real possibility. The decedent, in fact, contemplated that some of the trust principal would have to be sold. He specifically confided to his son that his ranch "would probably" be among the trust assets that would be sold, "the reason being that it was a drain rather than a benefitting asset." His son, within the scope of his authority as trustee, thereafter sold some of the trust's real estate, foreclosed upon certain notes that were also part of the trust principal, and attempted to negotiate the payment of other such notes. Nothing prohibited him, as trustee, from selling any of the trust properties; to the contrary, the decedent contemplated such sales. Nor was there any requirement that the proceeds of a sale of property not be invested in income-producing assets; to the contrary, the decedent appeared to favor "benefitting" assets.

---

[6] The decedent's transfer to the trust apparently involved only his share of the community property assets. *Estate of Bright v. United States*, 658 F.2d 999, 1001 (5th Cir. 1981) (en banc). The record does not reveal whether his wife's share of the community property was also part of the trust principal. The fact that her son, as trustee, dealt freely with that property indicates that her share of the community property was part of the trust estate. In that case, the principal would initially have a value of more than $2 million, and a return of just 3 percent would have exceeded the amount which Mrs. Nicholson reasonably required. That possibility further indicates that Mrs. Nicholson was not automatically "entitled to all the trust income."

Accordingly, even a consideration of the extrinsic evidence fails to show that the decedent intended that his wife be "entitled to all the income" from the trust.

The opinion of the Court of Appeals in *Estate of Mittleman v. Commissioner*, 522 F.2d at 133 n. 1, upon which petitioner relies, is not inconsistent with our opinion here. In that case, a decedent left his residuary estate to a trust for the following purposes:

> a. To provide for the proper support, maintenance, welfare and comfort of my beloved wife, HENRIETTA MITTLEMAN, for her entire lifetime.
>
> b. To invade the corpus of the trust estate from time to time in the sole and exclusive discretion of the Trustees and to use all or any portion of the said corpus for the proper support, maintenance and welfare of my wife, HENRIETTA MITTLEMAN.

Respondent argued that the above language failed to provide that "all of the income" of the trust be payable "annually or at more frequent intervals" to the surviving spouse, for purposes of section 2056(b)(5). Respondent initially prevailed in a Memorandum Opinion, *Estate of Mittleman v. Commissioner*, T.C. Memo. 1973-112.

In reversing, the Court of Appeals noted that the Mittleman will made no mention of income from the trust. To the court, the will placed no restriction—either "expressly" or "impliedly"—on the amount of income to be spent on behalf of the beneficiary. The only limitation upon trust expenditures were those restricting expenditures from the corpus to those expenditures made in the "sole and exclusive discretion of the Trustees." From this, the Court of Appeals concluded that the "compelling inference" was that the decedent intended to make an unqualified disposition of the income to the wife. The court rejected the notion that the decedent's specific provisions for "the proper support, maintenance, welfare and comfort" of his wife established any limit upon the amount of income she would receive. To the Court of Appeals, that language was "a mere declaration of the purpose of the trust." *Estate of Mittleman v. Commissioner*, 522 F.2d at 138. The court further found the language as to the disposition of income "ambiguous," thus justifying an examination of "surrounding circumstances." The court determined that these surrounding circumstances supported its conclusion that the

wife was "entitled to all of the income." It pointed out that the corpus of the trust was "not large" and that the anticipated income, without invasions of the trust, would produce yields "far short of the family income before Mr. Mittleman died." *Estate of Mittleman v. Commissioner,* 522 F.2d at 139. The court also took into account the decedent's explicit wish that his estate be able to claim the marital deduction.

This case is factually distinguishable. The trust at issue here, unlike the trust in *Mittleman,* contains explicit language limiting the amount of income that would be paid to the surviving wife. Here, the trustees are directed to pay only "so much of the net income" of the trust to the decedent's surviving spouse "as * * * [she] may from time to time require to maintain * * * [her] usual and customary standard of living." That language is not ambiguous, and no examination of "surrounding circumstances" is indicated. Were the situation otherwise, however, this case is still not *Mittleman.* The "surrounding circumstances" here show that the estate was capable of yielding income in excess of that needed to maintain the beneficiary in her accustomed standard of living. Accordingly, she was not necessarily entitled to "all the income." Moreover, here the decedent specifically did not draft his trust with an intention to maximize the marital deduction. There is, accordingly, no reason for us to contort the language he used in order to achieve that result.[7]

Finally, we do not believe that the modification to the trust instrument made in 1984, after the decedent's death, affects the result we have reached. We have not been provided with the evidence presented to the Texas court; we have only the decree allowing the modification. The new language in that modification provides specifically that the trustees "shall pay the net income of the Trust estate to

[7]Our determination that Mrs. Nicholson was not "entitled to all the income" from the trust makes it unnecessary for us to decide whether the income was "payable at least annually," as is required in sec. 2056(b)(7)(B)(ii)(I). We accordingly do not decide whether a grant of income to Mrs. Nicholson as she "may from time to time require" meets the requirement of annual payments under sec. 2056(b)(7). Respondent has indicated some views in this regard under Texas law in Private Letter Ruling 8951003 (Sept. 14, 1989); and cf. *Penix v. First Nat. Bank of Paris,* 260 S.W.2d 63 (Tex. Civ. App. 1953) (trustee may accumulate net income for future contingencies under provision that income beneficiary receive "all net rents and revenues"); and sec. 20.2056(b)-5(f)(7), Estate Tax Regs., (spouse not entitled to "all the income" if trust income may be accumulated in another's discretion).

Dorothy Nell Nicholson in quarterly or more frequent installments." The modified trust instrument appears to meet the requirements for the marital deduction set forth in section 2056(b)(7). As indicated above, however, we have found that respondent is entitled to estate taxes on the basis of the trust provisions that existed at the time of the decedent's death. The attempt to claim an estate tax deduction by means of a post-mortem modification to the trust instrument therefore fails. We will not give effect to a local court order or decree that alters or modifies a trust instrument after respondent has acquired rights to tax revenues under its provisions. *American Nurseryman Publishing Co. v. Commissioner,* 75 T.C. 271, 275 (1980); *Estate of Hill v. Commissioner,* 64 T.C. 867, 875-876 (1975), affd. in an unpublished opinion 568 F.2d 1365 (5th Cir. 1978); *M.T. Straight Trust v. Commissioner,* 24 T.C. 69, 74 (1955), affd. 245 F.2d 327 (8th Cir. 1957). *Loggie v. Thomas,* 152 F.2d 636 (5th Cir. 1945).[8]

Petitioner, in fact, does not now claim that the language of the 1984 modification is controlling. It is instead urged that the 1984 modification is merely a "clarification" of the decedent's original intention that all the trust income be distributed to his wife at least annually. We do not agree that the 1984 modification serves only to clarify the original instrument. The original document did not require that all the income go to Mrs. Nicholson; rather it restricted the payment of income to situations where some income is needed to maintain Mrs. Nicholson's standard of living. The modification, however, requires all income to go to her. The original instrument required payments of income only "from time to time." The 1984 modification, however, mandates quarterly payments of all the income. The original trust

---

[8]We have previously addressed two cases in which the courts gave effect to a retroactive change to property rights on the basis that a mistake had been made. Each of those cases, however, differs from that presented here. In *Flitcroft v. Commissioner,* 328 F.2d 449 (9th Cir. 1964), revg. 39 T.C. 52 (1962), the Court of Appeals gave retroactive effect to a State court decree making a trust irrevocable. In that case, there was no dispute that the settlors intended at its inception to make the trust irrevocable. Additionally, the Commissioner was made a party to, and otherwise had notice of, the attempt to reform the trust. In *Miglionico v. United States,* 323 F. Supp. 197 (N.D. Ala. 1971) the Federal court noted its agreement with a State court's conclusion that, despite a husband's purchase of stock in joint tenancy with his wife, the stock and its dividends belonged to the husband alone. In *American Nurseryman Publishing Co. v. Commissioner,* 75 T.C. 271, 275, 277 (1980), our citation to *Flitcroft* shows that it was contrary to the great weight of authority, and we specifically stated that *Miglionico* is "inconsistent with the decisions by this Court."

instrument indicates that accumulated but undistributed income would go to Mrs. Nicholson's children as part of the "Trust estate." The modification, however, provides that any accumulated but undistributed income would go to "her personal representative as part of her probate estate." The 1984 modification is thus more than a mere clarification; it is instead a substantial change in the trust instrument made after respondent had secured rights under the original instrument. As such, we will not give it effect.

We are mindful of the statement of the Texas State court that its modification of the 1984 trust instrument "would be in keeping with the intent of the settlors when the Trust was created." That statement, however, does not affect our opinion here. "Although this reformation may comply with the original intentions of the grantor as disclosed by * * * evidence at the hearing in that proceeding, it is not an interpretation of the original instrument." *M.T. Straight Trust v. Commissioner,* 24 T.C. at 74. Moreover and as we have found, decedent was not concerned with obtaining the maximum estate deduction. He was concerned with taking care of his wife's needs.

We are not unsympathetic to the contention that the decedent herein would have wished to establish a QTIP trust, but the fact is that he did not do so. There may well have been an opportunity for him to do so; the QTIP provisions were effective for estates of decedents dying after December 31, 1981, and decedent died in 1983. The evidence, however, does not disclose whether he was informed of the possibility of establishing a QTIP trust. Moreover, the decedent wished to spare his widow concerns about providing for her own support. We cannot dismiss the possibility that he might have preferred to have the trustees determine the amount of trust proceeds she required, rather than to force all income to be paid to her, as his adoption of a QTIP trust would mandate.

It follows that the decedent's desire that the trust "not create a tax problem" does not absolve his failure to take advantage of a possible QTIP marital deduction that Congress made available only in 1981, several years after he established the trust at issue. For estate taxes, as for

income taxes, "Deductions are a matter of legislative grace, and a taxpayer seeking the benefit of a deduction must show that every condition which Congress has seen fit to impose has been fully satisfied." *Wisely v. United States,* 893 F.2d 660, 666 (4th Cir. 1990), citing *Deputy v. duPont,* 308 U.S. 488, 493 (1940), and *New Colonial Ice Co. v. Helvering,* 292 U.S. 435, 440 (1934).

Because of concessions,

*Decision will be entered under Rule 155.*