964 F.2d 959
 69 A.F.T.R.2d 92-1475, 92-1 USTC P 60,101
 ESTATE OF George D. ELLINGSON, Deceased; Douglas L.M.
Ellingson, Lavedna M. Ellingson, Co-Trustees of
the George D. & Lavedna M. Ellingson,
Revocable Living Trust, Petitioners,
v.
COMMISSIONER INTERNAL REVENUE SERVICE, Respondent.
 No. 91-70539.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 14, 1992.
Decided May 20, 1992.
 
 Thomas J. Shumard, Phoenix, Ariz., for petitioners.
 Bridget Rowan, Tax Div., U.S. Dept. of Justice, Washington, D.C., for respondent.
 Appeal from a Decision of the United States Tax Court.
 Before: GOODWIN, SCHROEDER, and LEAVY, Circuit Judges.
 GOODWIN, Circuit Judge:
 
 
 1
 Estate of Ellingson appeals a Tax Court decision affirming the Commissioner of Internal Revenue's denial of a QTIP marital tax deduction. At his death, George Ellingson had bequeathed certain property in trust to his wife Lavedna. The Estate claimed a QTIP deduction on this property but the Commissioner determined that the deduction was inapplicable. The case turns on the language of the trust. We reverse.
 
 
 2
 While he was alive, George D. Ellingson, together with his wife Lavedna, established a comprehensive estate plan through an inter vivos trust (the "Trust"). George and Lavedna were the settlors and initial trustees of the Trust. The Trust covered property held by George and Lavedna, jointly and individually. The Trust Agreement described how that property would be administered and distributed, during the lifetime of George and Lavedna, and upon the death of one or both.
 
 
 3
 George died in 1986. His death invoked certain provisions of the Trust Agreement. Specifically, the Trust Agreement called for distributing the Trust's property into three smaller trusts. One of these three trusts, referred to within the Trust Agreement as the "Marital Deduction Trust," is the subject of this dispute. The principal asset of the Marital Deduction Trust is the family farm. The initial trustees of that trust were Lavedna and her son, Douglas. Lavedna was also the initial beneficiary.
 
 
 4
 According to the Trust Agreement, the trustees of the Marital Deduction Trust were required to distribute the "entire net income" of that trust in "quarter-annual or other convenient installments (but at least annually)." However, the Trust Agreement contained an Accumulation Proviso:
 
 
 5
 [I]f the income so payable to the Surviving Settlor shall, at any time or times, exceed the amount which the Trustee deems to be necessary for his or her needs, best interests and welfare, the Trustee may accumulate the same, as the Trustee deems advisable.
 
 
 6
 In its estate tax return, the Estate claimed a deduction for the Marital Deduction Trust property under 26 U.S.C. § 2056(b)(7), declaring the property as "qualified terminable interest property" (QTIP). The Commissioner denied the QTIP deduction and the Tax Court upheld the denial. Estate of George Ellingson v. Commissioner, 96 T.C. 760 (1991). The Estate timely appealed.
 
 
 7
 If the QTIP deduction does not apply to the Marital Deduction Trust property, then the Estate will owe taxes on that property as of the date of George's death. Otherwise, the taxes would be owed at the time Lavedna dies. The difference involves more than timing, however. The taxes assessed on the property exceed $8 million. To pay the estate tax now, the Estate would be required to sell the family farm during Lavedna's lifetime.
 
 
 8
 This case was submitted to the Tax Court on stipulated facts and that court decided the case as a matter of statutory and testamentary interpretation. Accordingly, this court will review de novo the Tax Court's decision. See Clougherty Packing Co. v. C.I.R., 811 F.2d 1297, 1299 (9th Cir.1987).
 
 I. QTIP Law
 
 9
 A person's property is subject to an estate tax when that person dies. 26 U.S.C. § 2001. However, 26 U.S.C. § 2056 allows the estate to deduct certain property which the decedent bequeathed to his or her spouse. Property which qualifies for a "marital deduction" is not taxed until the surviving spouse dies. One category of marital deduction is the QTIP deduction embodied in section 2056(b)(7). The QTIP deduction has three requirements:
 
 
 10
 (I) the property must pass from the decedent;
 
 
 11
 (II) the surviving spouse must have a qualifying income interest for life in the property; and
 
 
 12
 (III) the estate must make a QTIP election.
 
 
 13
 26 U.S.C. § 2056(b)(7)(B)(i).
 
 
 14
 The Commissioner does not dispute that the Estate has met requirements (I) and (III). The dispute is over requirement (II)--i.e., whether Lavedna has a "qualifying income interest for life" in the Marital Deduction Trust property. Lavedna will have such an interest if:
 
 
 15
 (I) the surviving spouse is entitled to all the income from the property, payable annually or at more frequent intervals, ... and
 
 
 16
 (II) no person has a power to appoint any part of the property to any person other than the surviving spouse.
 
 
 17
 26 U.S.C. § 2056(b)(7)(B)(ii).
 
 
 18
 The Commissioner does not challenge the Estate's contention that it has met condition (II). Rather, the Commissioner argues that because of the Trust Agreement's Accumulation Proviso, Lavedna is not entitled to all of the income payable by the Marital Deduction Trust property as required by condition (I).
 
 
 19
 In arriving at this conclusion, the Commissioner looked to the proposed tax regulations for the QTIP deduction. Those proposed regulations state, in pertinent part:
 
 
 20
 [T]he term "qualifying income interest for life" means [t]he surviving spouse is entitled for life to all the income from the property, payable annually or at more frequent intervals, and.... In general, the principles outlined in § 20.2056(b)-5(f), relating to whether the spouse is entitled for life to all of the income from the entire interest ... are applicable in determining whether the surviving spouse is entitled for life to all of the income from the property, regardless of whether the interest passing to the spouse is in trust.
 
 
 21
 Section 20.2056(b)-7(c)(1), Proposed Estate Tax Regs., 49 Fed.Reg. 21357 (May 21, 1984).
 
 
 22
 Although proposed regulations do not have the force of law, Estate of Howard v. C.I.R., 910 F.2d 633, 636 (9th Cir.1990), we find that this portion of the proposed regulations properly reflects the correct meaning of the statute. That portion of condition (I) from above which is relevant to this case also appears in section 2056(b)(5)--the code section for a marital deduction different from the QTIP deduction. In drafting the QTIP deduction, Congress intended that the QTIP property provide the spouse with rights to income "which are sufficient to satisfy the rules applicable to marital deduction trusts under present law (Treas.Reg. § 20.2056(b)-(f))." H.R.Rep. No. 97-201, 97th Cong., 1st Sess. at 161. The portion of the proposed regulations which is pertinent to this case looks to the regulations for the section 2056(b)(5) deduction in defining condition (I).
 
 
 23
 According to the proposed QTIP regulations, two of the conditions for treating an interest as a "qualifying income interest for life" are that the spouse must be: (1) "entitled to all the income;" and (2) "entitled for life." The Commissioner does not dispute that the property in question satisfies all other conditions for a QTIP deduction. Thus, the central questions of this case are whether Lavedna is "entitled to all the income" payable by the Marital Deduction Trust property, and whether she is "entitled for life" to that income.
 
 
 24
 As the proposed QTIP regulations indicate, the definitions of these two conditions are found in the regulations for section 2056(b)(5). Concerning the "entitled to all the income" condition, section 2056(b)(5)'s regulations state:
 
 
 25
 An interest passing in trust fails to satisfy the condition ... that the spouse be entitled to all the income to the extent that the income ... may be accumulated in the discretion of any person other than the surviving spouse; to the extent that the consent of any person other than the surviving spouse is required as a condition precedent to the distribution of the income; or to the extent that any person other than the surviving spouse has the power to alter the terms of the trust so as to deprive her of her right to the income.
 
 
 26
 Section 20.2056(b)-5(f)(7). Concerning "entitled for life," the regulations state:
 
 
 27
 In the case of an interest passing in trust, the term[ ] 'entitled for life' ... require[s] ... that under the terms of the trust the income ... must be currently ... distributable to the spouse or that she have such command over the income that it is virtually hers.
 
 
 28
 Section 20.2056(b)-5(f)(8).
 
 
 29
 The Estate makes two independent arguments that the Marital Deduction Trust property meets both conditions. The first argument concerns Lavedna's role as co-trustee. The second argument involves an interpretation of the Accumulation Proviso. The Estate's first argument is unavailing. The second, however, is persuasive.
 
 II. Lavedna's Role as Co-Trustee
 
 30
 The Estate argues that, even if the Accumulation Proviso would otherwise preclude the Marital Deduction Trust property from qualifying for a QTIP deduction, Lavedna's role as co-trustee ensures that the property will qualify. The Estate argues that, assuming Lavedna remains co-trustee until she dies, Lavedna is "entitled to all the income" according to the definition in the regulations. Also, under the same assumption, the income would be "virtually hers" and thus Lavedna would be "entitled for life." The problem with the Estate's argument is its underlying assumption. That is, Lavedna might not remain co-trustee until she dies. This possibility precludes the Estate from relying solely on Lavedna's role as co-trustee to claim the QTIP deduction.
 
 
 31
 In Estate of Kyle v. Commissioner, 94 T.C. 829 (1990), the Tax Court upheld the denial of a QTIP deduction. The surviving spouse in that case had received a homestead right in the transferred property. Homestead rights terminate on abandonment. As the Tax Court observed, "[t]here is no indication that the ERTA extension of the marital deduction to certain types of life estates was intended to cover interests that would lapse on events or occurrences other than the death of or a conveyance by the surviving spouse." Id. at 845.
 
 
 32
 Kyle's reasoning is instructive even though that case concerned the termination of a beneficiary's interest whereas this case involves the termination of a trustee's duties. The trustee's duties are relevant here because the trustee is also the beneficiary.[1] So long as the trustee and the beneficiary are the same person, any potential problems concerning discretion on the part of the trustee to distribute income are obviated. The opposite is true when the trustee and beneficiary are different people. Accordingly, an event which causes a beneficiary's interest to lapse and thereby precludes use of the QTIP deduction is analogous to an event which causes a trustee's duties to terminate and thereby precludes use of the QTIP deduction. In the present case, the events which can terminate the trustee's duties include resignation by the trustee or a declaration that the trustee is unable to manage her affairs. Under Kyle 's reasoning, these events preclude the Estate from relying on Lavedna's role as co-trustee to claim the QTIP deduction.
 
 
 33
 Accordingly, the Estate cannot avoid the apparent difficulties represented by the Accumulation Proviso by pointing to Lavedna's role as co-trustee. To demonstrate its eligibility for the QTIP deduction, the Estate must address the proviso directly. This it does in its second argument.
 
 
 34
 III. The Trustee's Discretion to Accumulate Income
 
 
 35
 The Estate argues that, properly interpreted, the Accumulation Proviso does not preclude qualification for the QTIP deduction. The Estate contends that the Trust Agreement does entitle Lavedna to "all" the income.
 
 
 36
 The Commissioner does not dispute that, as beneficiary, Lavedna is "entitled for life" to income from the Marital Deduction Trust property. The Commissioner argues, however, that Lavedna is not "entitled to all the income" because the Trust Agreement's Accumulation Proviso opens the door to someone else benefitting from accumulated income.
 
 
 37
 The Trust Agreement indicates that the trustee must pay the "entire net income" of the Marital Deduction Trust property to Lavedna. However, the Accumulation Proviso states that "if the income so payable ... shall ... exceed the amount which the Trustee deems to be necessary for ... [Lavedna's] needs, best interests and welfare, the Trustee may accumulate the same, as the Trustee deems advisable." The Commissioner argues that this proviso means that income payable by the Marital Deduction Trust may be accumulated at the discretion of someone other than Lavedna--the surviving spouse. Accordingly, he argues, Lavedna is not "entitled to all the income" as that phrase is defined in the tax regulations. The Commissioner's reading of the Trust Agreement causes the agreement to self-destruct in defiance of the settlor's obvious intent.
 
 
 38
 To determine the nature of the interest Lavedna acquired in the Marital Deduction Trust property, it is necessary to interpret the Trust Agreement. Interpretation of the Trust Agreement must be made under the law of the jurisdiction governing the agreement. See Estate of Doherty v. Commissioner, 95 T.C. 446, 460 (1990). The agreement is governed by Arizona law. Under Arizona law, wills and trusts are interpreted by ascertaining the intent of the testator or settlor. Matter of Estate of Gardiner, 5 Ariz.App. 239, 240, 425 P.2d 427, 428 (1967).
 
 A. The Settlors' Intent
 
 39
 George and Lavedna Ellingson were the settlors of the Trust and of the three derivative trusts. The first clue in determining their intent with respect to the derivative trust which is at issue is garnered by taking note of the name they chose for it: "Marital Deduction Trust." The name suggests that the settlors intended to claim a marital deduction for the trust property.
 
 
 40
 Next, the section of Trust Agreement in which the settlors first mention the Marital Deduction Trust is helpful. In that section, the settlors wrote:
 
 
 41
 The intention and direction of the Settlors is that all the property allocated to the Marital Deduction Trust (1) may qualify for the marital deduction as qualified terminable interest property, (2) may be elected pursuant to Internal Revenue Code Section 2056 by the Deceased Settlor's Personal Representative to qualify as terminable interest property, and (3) may not be taxed as part of the Deceased Settlor's estate, but shall only be taxed as part of the Surviving Settlor's estate at the Surviving Settlor's death.
 
 
 42
 The Tax Court dismissed this passage as constituting "generic statements of intent." Ellingson, 96 T.C. at ---. The Commissioner points to the use of the word "may" throughout the passage to argue that if the settlors did intend for the trust to qualify for a QTIP deduction, the intent was only a weak one and is overcome by other seemingly inconsistent clauses in the Trust Agreement. Both of these positions plant a fatal virus in the Trust Agreement never intended by its author.
 
 
 43
 To understand the intent clause and the Accumulation Proviso, it is useful to consider the development of the Trust Agreement. In the original version of the agreement, there was no Accumulation Proviso, and the intent clause indicated that the trustee "shall" claim the QTIP deduction. It seems beyond argument that under the original agreement, the Marital Deduction Trust property would have qualified for the QTIP deduction. However, two modifications were made to the agreement to leave it in the state in which it appears before this court. The first modification added the Accumulation Proviso, and changed the "shall" language in the intent clause to "may" language. In the original version of the agreement, the settlors themselves had made the choice regarding the QTIP election; in the final version, the settlors left that choice to the trustee. This reveals that the settlers had contemplated that the trustee might not make the QTIP election. However, they also contemplated that the trustee might make the election. In order to have a choice, the property would have to qualify. In other words, because the settlors intended for the trustee to have the choice, it follows that the settlors intended for the Marital Deduction Trust property to qualify for the QTIP deduction.
 
 
 44
 The Commissioner argues that other provisions of the Trust Agreement contradict this intent. He points out that, for example, the agreement contained tax payment provisions for the Marital Deduction Trust property and detailed instructions concerning the reinvestment of accumulated income. The Commissioner's argument falls short because these provisions would have been relevant had the trustee decided to forgo the QTIP election.
 
 
 45
 Because the settlors intended for the Marital Deduction Trust property to qualify for the QTIP deduction, the only question is whether they drafted the Trust Agreement so poorly as to defeat that intent. The Tax Court erred in dismissing this clearly expressed intent too hastily.
 
 B. The Accumulation Proviso
 
 46
 The Accumulation Proviso states that the trustee may accumulate income which is in excess of the amount necessary for Lavedna's "needs, best interests and welfare." The agreement does not define "best interests." As the Estate notes, it would not be in Lavedna's best interests for the trustee to be forced to sell the family farm so that the Estate could pay in excess of $8 million in estate taxes out of the Marital Deduction Trust property. Accordingly, they argue, the trustee of the Marital Deduction Trust actually possessed no discretion to accumulate income. To effectuate the settlors' intent, the trustee would have to pay all of the income of the trust to Lavedna during her life. In other words, paying Lavedna such amount of the income necessary for her "best interests" means paying Lavedna all of the income.
 
 
 47
 A number of factors support this reading. First, the reading does not nullify the Accumulation Proviso. If the trustee had chosen to decline to make the QTIP election, the proviso would become important because "best interests" would not include estate tax considerations. In that case, the trustee might well accumulate some of the income. Second, the income accumulation language in other parts of the Trust Agreement is quite different. For example, after Lavedna dies, the trustee of the very same trust at issue in this case will be permitted to accumulate income in excess of the amount "necessary or proper to provide for [the beneficiary's] care, comfortable maintenance, and support and reasonable comfort." This language would seem to exclude tax saving considerations. The "best interests" language at issue here, however, is much broader. Finally, and most significantly, this reading permits the settlors' overriding intent to be effectuated. The Tax Court and Commissioner's reading of the Accumulation Proviso is certainly plausible if the proviso is considered in isolation. However, that reading would frustrate the settlors' expressed intent.
 
 
 48
 In Estate of Todd v. Commissioner, 57 T.C. 288 (1971), the Tax Court reached a similar conclusion concerning a trust which had created a life interest for which the taxpayer had claimed a marital deduction. In Todd, the trust had contained income accumulation language authorizing the trustees to "pay so much of the net income of this trust ... as in their conclusive discretion should be so expended to accomplish the purposes of this trust." Id. at 290. Finding that the trust's overriding purpose was to qualify for a marital deduction, the Tax Court read the discretionary income distribution clause as meaning that the trustee was required to pay all of the trust's income. Id. at 293. Accordingly, the court allowed the marital deduction.
 
 
 49
 The cases relied on by the Tax Court in reaching its result are not applicable because those cases involved no clearly manifested intent, and because reformation of the interest-creating instrument would have been required to grant the QTIP deduction. In Estate of Nicholson v. Commissioner, 94 T.C. 666 (1990), the Tax Court upheld the denial of a QTIP deduction where the trust provided the surviving spouse with "so much of the net income ... as [she] may require ... to maintain ... her 'usual and customary' standard of living." Id. at 674. In Nicholson, the settlors had not clearly manifested an intent that the trust qualify for the QTIP deduction. In fact, after the decedent had died, the estate obtained a local order modifying the trust "in keeping with the intent of the settlors when the Trust was created." Id. at 669. The modifications would have qualified the trust for the QTIP deduction. The Tax Court disregarded the modification order and concluded that the settlors had intended something other than the QTIP deduction.
 
 
 50
 In addition, the language used by the Nicholson trust--"usual and customary standard of living"--is much narrower and more specific than that used in this case"best interests." Interpreting the Nicholson trust as qualifying for the QTIP deduction would have required the Tax Court to "rewrite the trust instrument." Id. at 675. No such task is required here to read the Trust Agreement as creating an interest which qualifies for the QTIP deduction.
 
 
 51
 Similarly, in Wisely v. United States, 893 F.2d 660 (4th Cir.1990), the Fourth Circuit upheld the denial of a QTIP deduction noting that "[t]he Estate has not pointed to any language in the will from which it can be concluded that the testator's paramount intention was to qualify the marital trust for a marital deduction...." Id. at 665. Moreover, the Wisely court noted that reformation of the will would have been required to permit the estate to claim a QTIP deduction. See id. at 665-666.
 
 
 52
 Estate of Doherty, 95 T.C. at 446 and Wells v. United States, 746 F.Supp. 1024 (D.Hawaii 1990), upon which the Commissioner relies, provide no assistance in interpreting the Accumulation Proviso in this case. While each of those cases involved an income accumulation clause, neither involved a dispute over the interpretation of the clause.
 
 IV. Conclusion
 
 53
 The Commissioner argues that it would make bad law to read a trust agreement as creating an interest which qualifies for a QTIP deduction solely because the settlor expressly declared in the trust that he intended that effect. We agree. However, this case does not implicate the Commissioner's concern. Certainly, the Trust Agreement could have been more clearly drafted. Nevertheless, the choice for this court is between two plausible readings of the agreement, only one of which effectuates the settlors' clearly manifested intent. If the Accumulation Proviso could plausibly be read only as granting the trustee unlimited discretion, the QTIP deduction would be lost. That is not the case here, however.
 
 REVERSED
 
 
 [1]
 Actually, Lavedna can never be the sole trustee. She will always be co-trustee with one other person or entity. However, for the purposes of this appeal, Lavedna is effectively the sole trustee so long as she remains co-trustee. Because the Trust Agreement requires that the income automatically be distributed to her and because income can be accumulated only with her permission, she retains control of the income