**ESTATE of Edward N. OPAL, Deceased, Mae Opal, Executrix, now by remarriage known as Mae Konefsky, Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

**No. 35, Docket 35310.**

United States Court of Appeals, Second Circuit.

Argued Oct. 6, 1971.

Decided Nov. 1, 1971.

Louis J. Opal, New York City, for appellant.

Ann E. Belanger, Washington, D. C. (Johnnie M. Walters, Asst. Atty. Gen., Meyer Rothwacks and Richard W. Perkins, Tax Div., Dept. of Justice, Washington, D. C., of counsel), for appellee.

Before FRIENDLY, Chief Judge, WATERMAN and SMITH, Circuit Judges.

FRIENDLY, Chief Judge:

The Estate of Edward N. Opal appeals from a decision reviewed by the Tax Court holding that a bequest by the decedent to his wife under a joint will constituted a terminable interest under I.R.C. § 2056(b) (1) which was not within the exception provided by I.R.C. § 2056(b) (5) and therefore did not qualify for the marital deduction provided for by I.R.C. § 2056(a).

The joint will, executed on August 29, 1961, began by reciting that:

We, EDWARD N. OPAL and MAE OPAL, his wife, both residing at 85–19 Avon Street, Jamaica, Queens County, New York, both of us being of sound and disposing mind and memory and mindful of the uncertainty of this life, do make, publish and declare this to be our joint LAST WILL AND TESTAMENT, hereby

agreeing, each of us with the other in consideration of the dispositive provisions hereinafter set forth, that this Will shall be irrevocable by either of us without the written consent of the other, and hereby revoking any and all former Wills and Codicils by us or either of us at any time heretofore made.

It continued:

Second: In the event Edward N. Opal predecease Mae Opal,

A. We direct that his just debts and funeral expenses be paid as soon after his decease as may be practicable;

B. All the rest, residue and remainder of the estate of Edward N. Opal, real, personal and mixed, and wheresoever the same may be situate, is hereby given, devised and bequeathed unto the said Mae Opal, absolutely and forever;

C. Thereafter and upon the death of said Mae Opal, and after the payment of her just debts and funeral expenses, all the rest, residue and remainder of the estate of said Mae Opal, real, personal and mixed, and wheresoever the same may be situate, is hereby given, devised and bequeathed unto our beloved son Warren Ian Opal, absolutely and forever.

There was a precisely similar provision, *mutatis mutandis*, to cover the event in which Mae predeceased Edward. A third article provided that if Edward and Mae died in a common accident or under circumstances leaving any doubt as to who had died first, their entire estates, after payment of debts and funeral expenses, should pass to Warren. Edward died on November 16, 1961; Mae survived. The estate tax return claimed the maximum marital deduction. The Commissioner disallowed this, a divided Tax Court affirmed, 54 T.C. 154 (1970),[1] and this appeal followed.

In providing for the marital deduction, § 2056 of the Internal Revenue Code of 1954 lays down, in subsection (b)(1), the following general rule:

(1) *General rule.*—Where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, an interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed under this section with respect to such interest—

(A) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse); and

(B) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse;

\*    \*    \*    \*    \*    \*

If this section stood alone it would be plain that the bequest to Mae did not qualify. The language in the preamble of the joint will is so clear as to render supererogatory any citation of New York authority that a binding contract was created. Despite the gifts to the surviving spouse "absolutely and forever," the manifest intention of the spouses was that everything the survivor owned on death should go to their son. It would be absurd to read these clauses as dictating the devolution of the property the surviving spouse owned of her or his own right, but not that which such spouse had received from the other. While a subsequent will made by the survivor in breach of the contract would be admitted to probate, a New York court would compel the executors to perform the contract. Tutunjian v. Vet-

1. The case was tried before Judge Forrester, who wrote the prevailing opinion; Judge Dawson wrote a concurring opinion that was joined by two other judges; Judge Simpson filed a separate concurring opinion that was joined by another judge; Chief Judge Drennan and another judge dissented.

zigian, 299 N.Y. 315, 319, 87 N.E.2d 275 (1949); Rich v. Mottek, 11 N.Y.2d 90, 226 N.Y.S.2d 428, 181 N.E.2d 445 (1962). It follows from this that "on the occurrence of an event or contingency," to wit, Mae's death, her interest in any of Edward's property that she still owned would necessarily pass to Warren regardless of any contrary desire on her part, and Warren might "possess or enjoy" such part of Edward's estate. With respect to any property of Edward's remaining in Mae's hands at her death, she would have had, and was intended to have, only a life interest. Although this portion of Edward's property might ultimately prove to be small or even non-existent, § 2056(b) (1) looks at the possibilities as of the date of the first death. Jackson v. United States, 376 U.S. 503, 508, 84 S.Ct. 869, 11 L. Ed.2d 871 (1964); Allen v. United States, 359 F.2d 151, 154 (2 Cir.), cert. denied, 385 U.S. 832, 87 S.Ct. 71, 17 L. Ed.2d 67 (1966).

Congress somewhat tempered the severity of the "general rule" by an exception, § 2056(b) (5). This reads:

(5) *Life estate with power of appointment in surviving spouse.*—

In the case of an interest in property passing from the decedent, if his surviving spouse is entitled for life to all the income from the entire interest, or all the income from a specific portion thereof, payable annually or at more frequent intervals, with power in the surviving spouse to appoint the entire interest, or such specific portion (exercisable in favor of such surviving spouse, or of the estate of such surviving spouse, or in favor of either, whether or not in each case the power is exercisable in favor of others), and with no power in any other person to appoint any part of the interest, or such specific portion, to any person other than the surviving spouse—

(A) the interest * * * so passing shall, for purposes of subsection (a), be considered as passing to the surviving spouse, and

(B) no part of the interest so passing shall, for purposes of paragraph (1) (A), be considered as passing to any person other than the surviving spouse.

This paragraph shall apply only if such power in the surviving spouse to appoint the entire interest, * * * whether exercisable by will or during life, is exercisable by such spouse alone and in all events.

* * * * * *

This provision in the 1954 Code replaced § 812(e) (1) (F) of the Internal Revenue Code of 1939 as amended by the Act of April 2, 1948. The 1948 statute was generally similar except that in terms it was limited to property left in trust with the life income payable to the surviving spouse where such spouse had power "to appoint the entire corpus *free of the trust* (exercisable in favor of such surviving spouse, or of the estate of such surviving spouse, or in favor of either, whether or not in each case the power is exercisable in favor of others) * * *." (emphasis supplied) In Pipe's Estate v. C. I. R., 241 F.2d 210, 213 (2 Cir.), cert. denied, 355 U.S. 814, 78 S.Ct. 15, 2 L.Ed.2d 31 (1957), a case governed by the 1948 statute, this court dealt with a will giving the widow, during her natural life, "full power to use, enjoy, sell or dispose of the income and principal" of the residuary estate "for such purposes or in such manner, as she in her uncontrolled discretion may choose, it being my desire to place no restraint on her in any respect concerning the absolute right of full disposition and use of the whole or any part of said income or principal of my residuary estate, except that she shall have no power over the disposition of such part thereof as remains unexpended at the time of her death." This interest was of the same sort as Mrs. Opal's under what we believe would be a New York court's construction of the joint will. This court held that the bequest did not qualify under § 812(e) (1) (F) since in order to comply with that provision, "the surviving spouse must be able to appoint

the entire corpus 'free of the trust' to herself or her estate." Mrs. Pipe could not do that "because as long as any of the corpus of her estate remains, it will be held 'in trust' for the named remaindermen." 241 F.2d at 213 (footnote omitted). See also May's Estate v. C. I. R., 283 F.2d 853 (2 Cir. 1960), cert. denied, 366 U.S. 903, 81 S.Ct. 1045, 6 L.Ed.2d 202 (1961), and United States v. Lincoln Rochester Trust Co., 297 F.2d 891 (2 Cir.), cert. denied, 369 U.S. 887, 82 S.Ct. 1160, 8 L.Ed.2d 287 (1962), both also arising under the 1948 statute.

The legislative history shows that the changes made in § 812(e) (1) (F) of the 1948 amendment to the 1939 Code in the course of its transformation into § 2056(b) (5) of the 1954 Code were meant to accomplish two objectives. One was to provide that the exception should be available for legal life estates as well as trusts, an issue over which this court had been troubled in *Pipe's Estate* but which we assumed in the taxpayer's favor; the other was to make clear "that a right to income plus a general power of appointment over only an undivided part of the property will qualify that part of the property for the marital deduction." See House Report No. 1337, 83d Cong., 2d Sess. in 3 U.S. Code Cong. & Admin. News (1954) pp. 4118–4119, 4461–4462 (1954), and Senate Report No. 1622, *id.* at 4758–4759, 5118–5119. Although the former purpose required elimination of the words "free of the trust," the committee reports make it plain that Congress did not intend to abandon the requirement, stated plainly enough in the new statute, that, in order for the bequest to qualify for the marital deduction, the surviving spouse must have power not only to consume the property or to give it to others but to vest it in herself or her estate, either during her life or by will. Under what we believe would be a New York court's reading of the joint will, Mrs. Opal

could not do this. Any lifetime "gift" of Edward's property to herself would have been meaningless, since she already had complete power to consume it or, even taking a view of New York law most favorable to the appellant to give it away, whereas any unconsumed portion of the "gift" to herself would remain part of her estate and would pass to Warren. Still more plainly she could not give the property to her estate, either by deed or by will, in any meaningful sense, since she had agreed that her entire estate should pass to Warren. As the statute requires that she have power to vest the property in herself or her estate,[2] we need not consider whether, as urged by the Commissioner, New York law would forbid her giving the property to someone else in a manner that would frustrate the joint plan. See Rastetter v. Hoenninger, 214 N.Y. 66, 74, 108 N.E. 210 (1915).

Appellant fares no better if we look to the Estate Tax Regulations, although these do treat the problem in a curiously convoluted fashion. Treasury Regulation § 20.2056(b)–5(g) (1) (i) says that the statutory test is not met unless the power falls within one of several categories, including:

> (i) A power so to appoint fully exercisable in her own favor at any time following the decedent's death (as, for example, an unlimited power to invade) * * *

If this were all, the interest here bequeathed to Mae would qualify, since the will imposed no restrictions on her devoting Edward's property to her own use. However, what this subsection would seem to give, others take away. Regulation § 20.2056(b)–5(g) (2) says:

> (2) The power of the surviving spouse must be a power to appoint the entire interest * * * as unqualified owner (and free of the trust if a trust is involved, or free of the joint

---

**2.** It seems clear from the plain words of the statute, as well as our decision in *Pipe*, that a will giving the surviving spouse a life interest in the income, full

power to invade the principal for her own use, and power to give the principal to anyone except herself or her estate, would not meet the statutory test.

tenancy if a joint tenancy is involved) or to appoint the entire interest * * * as a part of her estate (and free of the trust if a trust is involved), that is, in effect, to dispose of it to whomsoever she pleases. * * *

And Regulation § 20.2056(b)–5(g) (3) says, among other things, that:

(3) * * * In order for a power of invasion to be exercisable in all events, the surviving spouse must have the unrestricted power exercisable at any ⁺ime during her life to use all or any part of the property subject to the power, and to dispose of it in any manner, including the power to dispose of it by gift (whether or not she has power to dispose of it by will).

The "power to appoint the entire interest * * * as unqualified owner" must include the power to appoint to one's self or one's estate in such a manner that the property will be free of conditions imposed by the testator upon the devolution of the property on the survivor's death. Since Mrs. Opal did not have this, the exception does not apply.

Affirmed.