ESTATE OF ROBERT F. PROX, Deceased, AIMEE M. PROX, Executrix, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Prox v. Commissioner
Docket No. 10091-74.
United States Tax Court
T.C. Memo 1976-229; 1976 Tax Ct. Memo LEXIS 176; 35 T.C.M. (CCH) 1003; T.C.M. (RIA) 760229; July 21, 1976, Filed Benjamin G. Cox, for the petitioner. Robert P. Ruwe, for the respondent. TANNENWALD
*177 MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined a deficiency of $8,504.56 in the estate tax of the estate of Robert F. Prox. The parties have settled certain issues, leaving for our determination whether an interest in the decedent's residuary estate passing under his will to his surviving spouse may be deducted under section 2056 [1] or is a nondeductible terminable interest. FINDINGS OF FACT Some of the facts are stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner is the executrix of the Estate of Robert F. Prox. Her legal residence was in Terre Haute, Indiana at the time of the filing of the petition herein. The estate tax return was filed with the office of the Internal Revenue Service at Indianapolis, Indiana. Robert F. Prox (hereinafter referred to as decedent) died a resident of Indiana on September 3, 1970. He was survived by Aimee M. Prox, his widow, and by their three adult children. Decedent's last will and *178 testament provided, in material part: ITEM TWO
In the event my wife, Aimee M. Prox, survives me, then and in such event, I hereby give, devise and bequeath unto my said wife, Aimee M. Prox, all the rest, residue and remainder of the property, real, personal and/or mixed wherever situate of which I may die possessed, together with the use and proceeds thereof during her lifetime for her sole use and maintenance for and during her natural life, with full power to use, dispose of, sell and convey any or all of said property as she may desire, the same as I might do if living. ITEM THREE
In the event my said wife survives me, then and in such event I give, devise and bequeath whatever may remain in my estate and the proceeds thereof upon the death of my wife as follows: (a) I hereby give and bequeath to my son, Robert F. Prox, Jr., all of the stock of Frank Prox Company, Inc., which I may own at the time of my death, remaining undisposed of by my wife at the time of her death, to be his absolutely and forever. (b) All the rest, residue, and remainder of my estate, real, personal and/or mixed and wherever situate, of which I die possessed or which I have the power *179 to dispose of by will, remaining undisposed of by my wife at the time of her death, I hereby will, devise and bequeath as follows: (1) to my son, Robert F. Prox, Jr., one-third (1/3) of such rest, residue, and remainder after deducting from said one-third thereof an amount equal to the aggregate par value of the stock of Frank Prox Company, Inc. given and bequeathed to my said son by paragraph (a) of this Item. (2) to my daughters, Dorothy C. Williamson and Betty M. Parish, in equal parts, all of said rest, residue, and remainder of my estate not herein given, devised and bequeathed to my son, Robert F. Prox, Jr. * * * It is my wish that all of my stock in the said Frank Prox Company, Inc., in any event, shall be and become the property of my said son, Robert F. Prox, Jr., as set out hereinabove. It is also my wish that that residue, if any, of my estate be divided so as to equalize, as nearly as I have deemed practicable in view of the fact that I desire my said son to have said stock, the gross amounts which each of my children are to receive from my estate * * *. ITEM FOUR
In the event my said wife, Aimee M. Prox, shall predecease me, or shall die simultaneously *180 with me * * * then in either of such events: (a) I hereby give and bequeath to my son, Robert F. Prox, Jr., all of the stock of Frank Prox Company, Inc., which I may own at the time of my death to be his absolutely and forever. (b) All the rest, residue, and remainder of my estate, real, personal and/or mixed and wherever situate, of which I die possessed or which I have the power to dispose of by will, I hereby will, devise and bequeath as follows: (1) to my son, Robert F. Prox, Jr., one-third (1/3) of such rest, residue, and remainder after deducting from said one-third thereof an amount equal to the aggregate par value of the stock of Frank Prox Company, Inc. given and bequeathed to my said son by paragraph (a) of this Item. (2) to my daughters, Dorothy C. Williamson and Betty M. Parish, in equal parts, all of said rest, residue and remainder of my estate not herein given, devised and bequeathed to my son, Robert F. Prox, Jr.
* * *
At his death, decedent owned property (not including insurance or property in which his wife had a survivorship interest) consisting of real estate having a fair market value of $37,832.55, stock of Frank Prox Company, Inc. (hereinafter *181 "Prox Company") having a fair market value of $22,110.00, and miscellaneous personal effects having a fair market value of $100.00. Decedent was born on August 2, 1895. He was active in the operation of the Prox Company until his retirement in 1965. At the beginning of 1965, Robert F. Prox, Jr., owned 100 shares of Prox Company stock and had been president of Prox Company since about 1960. Decedent made the following gifts of Prox Company stock to Robert F. Prox, Jr.: Calendar year
Number of shares
1965
150
1967
100
1968
100
1969
100
1970
100
The last four gifts were reported as part of the gross estate on the estate tax return. In 1965, Aimee M. Prox gave Robert F. Prox, Jr., 449 shares of Prox Company stock. On the date of decedent's death, Robert F. Prox, Jr., owned a total of 1,199 out of 2,900 outstanding shares. [2] Decedent owned 201 shares, and decedent's widow owned one share. Certificates for the 201 shares included in decedent's estate were issued to decedent's widow, who subsequently made the following transfers of shares to Robert F. Prox, Jr., without consideration: Date
Number of shares
April 20, 1972
60
January 2, 1973
60
January 2, 1974
60
January 2, 1975
22
202
*182 It was decedent's desire that his son have control of the Prox Company. At the time of trial, Robert F. Prox, Jr., owned 1,750 Prox Company shares, having acquired 349 additional shares from the Estate of Adelaide C. Prox on February 10, 1975. In early October, 1970, the three children of decedent, together with their spouses, executed separate documents, each entitled "QUIT CLAIM DEED," by which each conveyed to Aimee M. Prox: All right, title, and interest of the Grantors in and to the real estate of Robert F. Prox, deceased, * * * which he may have owned at the time of his death * * *, either as an heir of or as a legatee and devisee under the Last Will and Testament of the said Robert F. Prox, including any and all right, title and interest in and to said child of Robert F. Prox in and to the personal property or any other properties of the said Robert F. Prox whatsoever in order that the Grantee, Aimee M. Prox, * * * shall be deemed to be the sole and only heir, devisee and legatee of her husband * * *. One purpose for the execution of these instruments was to clarify title to certain real estate owned *183 by decedent at his death which was about to be sold under threat of condemnation. There was no consideration for the execution of the documents. Although it was generally understood within the family that Robert F. Prox, Jr., would acquire control of Prox Company, there was never an understanding among Mrs. Prox and her children that any property she received from her husband's estate would be held by her and passed on to the children at her death. The children did expect, however, that the daughters would receive a larger share of Mrs. Prox' estate to compensate for her transfer of Prox Company stock to her son. OPINION Respondent determined that interests passing to Aimee M. Prox under decedent's will were not deductible under section 2056 because they were "terminable interests" within the meaning of section 2056(b). [3] He claims that she received only a life estate in the residuum under Item Two of decedent's will, and that any power she had to dispose of the property was neither exercisable in all events nor in favor of herself or her estate. Finally, he contends that the quitclaim deeds executed by decedent's children in favor of their mother did not constitute disclaimers *184 within the meaning of section 2056(d)(2). Petitioner disputes each of these points. *185 The threshold issue is the nature of the interest which passed from the decedent to his widow. If we determine that she received that interest either outright or as a life estate with an unrestricted power to appoint in favor of herself or her estate, the marital deduction is allowable. The parties agree (and correctly so) that resolution of this issue is dependent upon state law, in this case the law of Indiana. Estate of Yale C. Holland,64 T.C. 499 (1975); Estate of Wilhelmina L. Benjamin,44 T.C. 598, 604 (1965); sec. 20.2056(b)-5(e), Estate Tax Regs. As is usually the situation, when we examine relevant state law, we find no case which is so similar in terms of language and surrounding circumstances that it can be considered controlling. Indeed, the Indiana courts at an early date recognized that each case is sui generis. Curry v. Curry,58 Ind. App. 567, 105 N.E. 951, 957 (1914). See also Semmes v. Gary National Bank,144 Ind. App. 25, 242 N.E. 2d 517, 520 (1968). Cf. Estate of Wilhelmina L. Benjamin,supra,44 T.C. at 606-608. In short, there is no absolute rule of law which *186 we can apply herein. Rather our task is to attempt to ascertain the decedent's intention from the will as a whole, taking into account the surrounding circumstances ( In re Estate of Brown,145 Ind. App. 591, 252 N.E. 2d 142 (1969); Billings v. Deputy,85 Ind. App. 248, 146 N.E. 219 (1925)), a determination which "is, in the final analysis, the most difficult and illogical, in many instances, since it is often necessary to replace the intent of the testator with the intent of the court." See Semmes v. Gary National Bank,supra,242 N.E. 2d at 521. Under these circumstances, we find the microscopic examination to which the parties have subjected the Indiana cases largely beside the point. Obviously, the decedent herein (or perhaps, more accurately, his lawyer) did not use the clearest of language. If he had done no more than devise and bequeath his property to his widow, the absence of such phrases as "in fee," "in fee simple," "as her own property," or "absolutely" would not have precluded a construction giving her the property outright. Nichols v. Alexander,90 Ind. App. 520, 152 N.E. 863 (1926); Mulvane v. Rude,146 Ind. 476, 45 N.E. 659 (1896). *187 On the other hand, the decedent's use of phraseology referring to his widow's "lifetime" and "life" does not clearly establish that he intended her to have a life estate since it occurs in a separate and additive clause which does not directly qualify the initial granting language, but is set off by commas and begins with the words "together with." We recognize, of course, that punctuation cannot be determinative of construction; but it does constitute a relevant consideration. Compare Nichols v. Alexander,supra, with Billings v. Deputy,supra.
More importantly, the decedent went on to vest in his widow "full power to use, dispose of, sell and convey any or all of said property as she may desire,the same as I might do if living." (Emphasis added). The decedent owned the property in question outright and had the full and unrestricted right to dispose of it as he saw fit. Consequently, the above quoted language, which is strong language indeed, would seem to confer equivalent power upon the widow. See Estate of Horner v. United States, F. Supp. (S.D.Iowa 1976). Compare Waybright v. Longstreet,221 Ind. 251, 46 N.E. 2d 683 (1943), *188 with Crawfordsville Trust Co. v. Elston Bank & Trust Co.,216 Ind. 596, 25 N.E. 2d 626 (1940). Cf. also Rinkenberger v. Meyer,155 Ind. 152, 56 N.E. 913 (1900). While the fact that Item Three of the decedent's will provided for gifts over has some bearing on the problem at hand, its impact is lessened by the fact that the gifts extended only to "whatever may remain" and not to the entire property. Compare Mulvane v. Rude,supra, and Rinkenberger v. Meyer,supra, with Oliphant v. Pumphrey,193 Ind. 656, 141 N.E. 517 (1923), and Skinner v. Spann,175 Ind. 672, 93 N.E. 1061 (1911). Nor do we consider the decedent's desire that his son control the Prox Company particularly significant since, even with the 201 shares owned by the decedent, the son would have owned less than 50% of the outstanding shares. He obtained the ownership of more than 50% of the shares only after acquiring shares from the estate of Adelaide Prox. See p. 7, supra.
The two Indiana cases which have the most direct bearing on the ultimate issue herein are Waybright v. Longstreet,supra, *189 and Crawfordsville Trust Co. v. Elston Bank &Trust Co.,supra.Both cases dealt with the extent of a power of disposition annexed to a lifetime interest. In Waybright, the life tenant, decedent's sister, gave the subject property to her husband one day before her own death, and the decedent's heirs sought to set the transfer aside on the ground that it was an unauthorized testamentary disposition. The court upheld the transfer by the sister, stating that the broad power of disposition granted to her [4] did no more than "prevent her from intentionally and fraudulently making any disposition of the property for the purpose of circumventing the expressed desires of the testatrix." See 46 N.E. 2d at 685 (emphasis added). In Crawfordsville Trust, the court sustained an appointment in trust, for her own lifetime benefit with named remaindermen, by a surviving spouse who was given a broad power of disposition over a portion of the property bequeathed in trust for her benefit by her husband, but at the same time held invalid her attempt to dispose of the remaining portion of the property by will. [5]
*190 Our analysis of Indiana law leads us to conclude that it is highly doubtful that the provisions of the instant will passed full title to decedent's property to his widow. We have no need, however, to resolve this issue definitively because we have concluded that, even if the widow had only a life estate, she was vested with a power of disposition sufficiently broad to satisfy the requirements of section 2056(b)(5) and the regulations thereunder. See Estate of Yale C. Holland,supra,64 T.C. at 510. In our judgment, the only limitation on that power, under Indiana law, was that the widow could not deliberately use it to effectuate a testamentary disposition.[6] This is tantamount to saying only that she could not appoint to her estate. But clearly this limitation is not sufficient to require disallowance of the marital deduction; such a holding would render meaningless the statutory provision which encompasses a power "exercisable in favor of such surviving spouse, or of the estate of such surviving spouse, or in favor of either" (emphasis added); see also sec. 20.2056(b)-5(g), Estate Tax Regs. We see nothing in such cases as Estate of Opal v. Commissioner,450 F.2d 1085 (2d Cir. 1971), *191 affg. 54 T.C. 154 (1970), Pipe's Estate v. Commissioner,241 F.2d 210 (2d Cir. 1957), affg. 23 T.C. 99 (1954), and Estate of Francis F. Field,40 T.C. 802 (1963), which dictates a contrary conclusion. Cf. Tyler v. United States,468 F.2d 959 (10th Cir. 1972); United States v. Spicer,332 F.2d 750 (10th Cir. 1964); McGehee v. Commissioner,260 F.2d 818 (5th Cir. 1958) (on rehearing); Estate of Walter L. Edwards,58 T.C. 348 (1972). Those cases involved a much broader "good faith" obligation owed by a life tenant to a remainderman in respect of the exercise of a power of disposition [7] than we believe exists under Indiana law in the circumstances of this case. See Estate of Horner v. United States, supra. Consequently, we need not deal with the extent to which the decided cases may be in conflict in this area. [8] See Estate of Medora L. Salter,63 T.C. 537, 546, n. 6 (1975), on appeal (5th Cir., Apr. 17, 1975). *192 In view of our conclusion as to the scope of the widow's power of disposition herein, we do not reach the question whether the quitclaim deeds constituted disclaimers within the meaning of section 2056(d)(2). See Estate of Ludwig Neugass,65 T.C. 188 (1975), on appeal (2d Cir. Apr. 16, 1976); Estate of Medora L. Salter,supra;Estate of C. Warren Caswell,62 T.C. 51 (1974). To permit the necessary adjustments, Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect and applicable to decedent's estate.↩
2. He acquired 100 shares by purchase from Bettie M. Parish.↩
3. Section 2056 provides, as herein material: SEC. 2056. BEQUESTS, ETC., TO SURVIVING SPOUSE (a) Allowance of Marital Deduction.--For purposes of the tax imposed by section 2001, the value of the taxable estate shall, except as limited by subsections (b), (c), and (d), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse * * *. (b) Limitation in the Case of Life Estate or Other Terminable Interest.-- (1) General rule.--Where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, an interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed under this section with respect to such interest -- (A) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse); and (B) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse; * * *
(5) Life estate with power of appointment in surviving spouse.--In the case of an interest in property passing from the decedent, if his surviving spouse is entitled for life to all the income from the entire interest * * * payable annually or at more frequent intervals, with power in the surviving spouse to appoint the entire interest * * * (exercisable in favor of such surviving spouse, or of the estate of such surviving spouse, or in favor of either, whether or not in each case the power is exercisable in favor of others), and with no power in any other person to appoint any part of the interest * * * to any person other than the surviving spouse -- (A) the interest * * * so passing shall, for purposes of subsection (a), be considered as passing to the surviving spouse, and (B) no part of the interest so passing shall, for purposes of paragraph (1)(A), be considered as passing to any person other than the surviving spouse. This paragraph shall apply only if such power in the surviving spouse to appoint the entire interest, * * * whether exercisable by will or during life, is exercisable by such spouse alone and in all events. * * *
(d) Disclaimers.-- * * *
(2) By any other person.--If under this section an interest would, in the absence of a disclaimer by any person other than the surviving spouse, be considered as passing from the decedent to such person, and if a disclaimer of such interest is made by such person and as a result of such disclaimer the surviving spouse is entitled to receive such interest, then -- (A) if the disclaimer of such interest is made by such person before the date prescribed for the filing of the estate tax return and if such person does not accept such interest before making the disclaimer, such interest shall, for purposes of this section, be considered as passing from the decedent to the surviving spouse, and (B) if subparagraph (A) does not apply, such interest shall, for purposes of this section, be considered as passing not to the surviving spouse, but to the person who made the disclaimer, in the same manner as if the disclaimer had not been made.↩
4. The sister gave the property to a trustee for the purpose of having the trustee immediately reconvey the property to her husband, which was done. The provision of the will which the court interpreted was as follows: I give, devise and bequeath to Mima Parker, my sister, if she survives me, all the rest of the residue and remainder of my estate, wherever situate, for her use, benefit, and enjoyment as long as she lives and with the power to use, sell, dispose of as she desires all property given to her in this Item of Will. I desire that she give to my friends the presents they have given to me and any of my silverware, dishes, bed clothing and other trinkets they may desire. Papa's coverlet I want to always remain with some one of our family. I also want you to send to Adolphus E. Johnson a copy of my will and the letter which I have left for him. Now, Mima, I am making this bequest for you to enjoy yourself, with your husband, and do not permit your generosity to give it away, except as I have indicated herein. If any of the property given to said Mima Parker is not disposed of by her during her lifetime, then I give, devise and bequeath that part thereof not disposed of by the said Mima Parker in her lifetime, one-fifth to the children of my sister, Martha Overleese, deceased; one-fifth to the children of my brother, Wesley Nation, deceased; one-fifth to the children of my brother, Lige Nation, deceased; one-fifth to the children of my sister, Mima Parker, and the remaining one-fifth to the following children and grandchildren of my deceased sister, Sarah Sefton, as follows: one-third to Clarence Sefton, one-third to Hubert Bradley and one-third to Harold Ruddell, Jessie Ruddell, Ralph Ruddell and Helen Spillman. ↩
5. The husband died on February 27, 1937. The surviving spouse executed her last will and testament on June 15, 1937 and the deed of trust on July 3, 1937, which was recorded July 15, 1937, the day she died. The husband's will contained the following provision (which was clearly more restrictive than the one involved in the instant proceeding): After the above provision is complied with, I will, bequeath and devise all the balance of my property of every kind and wherever situated, to my beloved wife, Sarah E. Durham for and during her natural life, with power and authority to dispose of, sell, convey or make gift of and to use and expend the same or any part of it in any way she sees fit. It is not my intention to will, bequeath and devise said property and estate to my said wife absolutely and in fee simple, but simply to authorize and empower her to use the same and dispose of the same while she has it during her life time if she sees fit to do so. In the event my said wife shall not dispose of all of said property in her life time in any of the methods set out above, then, what is left of the same at her death shall not descend to her heirs, nor under any will of hers, but the same shall be disposed of in the following manner:↩
6. The term "testamentary disposition" is here used in its strictest sense, since it did not extend to gifts shortly before the death of the holder of the power (in Waybright), or to gifts taking effect at the holder's death (in Crawfordsville Trust↩). 7. We also note that cases involving joint and mutual wills, such as Opal, may well be distinguishable on the ground that an implied agreement is involved. See 450 F.2d at 1088↩. 8. Batterton v. United States,406 F.2d 247 (5th Cir. 1968); United States v. First Nat. Trust & Sav. Bank of San Diego,335 F.2d 107 (9th Cir. 1964); May's Estate v. Commissioner,283 F.2d 853 (2d Cir. 1960), affg. 32 T.C. 386 (1959). But cf. Estate of Harry A. Ellis,26 T.C. 694 (1956), vacated and remanded, 252 F.2d 109↩ (3d Cir. 1958).