T.C. Memo. 2003-55

UNITED STATES TAX COURT

ESTATE OF RALPH H. DAVIS, DECEASED, EVELYN DAVIS, PERSONAL
REPRESENTATIVE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 210-02.                    Filed February 28, 2003.

<u>Richard S. Calone</u>, <u>Robin Klomparens</u>, and <u>Jason W. Harrell</u>,
for petitioners.

<u>Kathryn K. Vetter</u>, for respondent.


MEMORANDUM OPINION

WELLS, <u>Chief Judge</u>:  Respondent determined a deficiency in
the Federal estate tax of the Estate of Ralph H. Davis (estate)
in the amount of $220,593.  Unless otherwise indicated, all
section references are to the Internal Revenue Code in effect on

the date of death of Ralph H. Davis (decedent), and all Rule references are to the Tax Court Rules of Practice and Procedure. The issue to be decided in the instant case is whether the interest received by decedent's surviving spouse in certain property qualifies for the marital deduction pursuant to section 2056.

## Background

The parties submitted the instant case, fully stipulated, without trial, pursuant to Rule 122. The parties' stipulations of facts are hereby incorporated by this reference and are found as facts in the instant case.

Decedent was born on June 1, 1919, and died testate on July 14, 1997, at the age of 78, in Stockton, California. At the time of his death, decedent was a resident of San Joaquin County, California, and a citizen of the United States. During his lifetime, decedent worked for 44 years as an electrical engineer for Westinghouse Corporation.

Decedent was survived by his wife, Evelyn L. Kimball Davis (Evelyn Davis). Evelyn Davis, who resides in Stockton, California, is the personal representative of the estate. Decedent was also survived by his two daughters, Carol Tawney Pencke and Mary Martha Bennett.

On February 24, 1993, decedent executed a will (1993 will). The 1993 will names decedent's daughters, Carol Tawney Pencke and

Mary Martha Bennett, as personal representatives of his estate. In Section 1.1 of the 1993 will, decedent indicated his intent to create another instrument which would dispose of his tangible personal property. Except as might otherwise be provided in such an instrument, the will left his tangible personal property to his daughters Carol Tawney Pencke and Mary Martha Bennett.

Article One, section 1.2, of the 1993 will provides for the care and transport of decedent's personal property and also provides for the disposition of insurance on such property. Article Two, section 2.1, of the 1993 will provides:

> I give all the residue of my estate, to the Trustee under my Declaration of Trust dated the same date as this Will or if my said Declaration of Trust is not in existence or is not effective at the time of my death, to be held in trust on the same terms and conditions specified therein as it existed at the time of the execution of this Will or if [sic] the last Codicil hereto, with like effect as if the terms and conditions were set forth herein verbatim.

Article Three of the 1993 will appoints decedent's two daughters as personal representatives under the 1993 will. In the event that neither daughter can serve as personal representative, decedent appointed PNC Trust Company of Florida, N.A., to serve as the representative of his estate. Article Four of the 1993 will provides generally and specifically for the powers of the fiduciary or fiduciaries under the 1993 will. Article Five of the 1993 will provides for the payment of taxes,

to be paid by the personal representative of the estate out of the principal of the estate.

On February 24, 1993, pursuant to a "Declaration of Trust", decedent established a trust (1993 trust) naming himself as grantor, trustee, and lifetime beneficiary (grantor and decedent being one and the same, grantor will hereinafter sometimes be referred to as "decedent"). Section 1.1 of Article One of the 1993 trust, entitled "Distribution of Income and Principal", provides:

> During the grantor's lifetime, while he is serving as trustee, he shall be entitled to all of the net income ("Income") from the trust estate, payable in convenient installments, and he may withdraw such sums as he desires from principal at any time or times.

Section 1.2 of Article One of the 1993 trust provides:

> [If] at any time or times the grantor shall be unable to manage his affairs, the successor trustee shall use such sums from the income and principal of the trust as the successor trustee deems necessary or advisable for his care, support and comfort, or for any other purpose the successor trustee considers to be for the grantor's best interests, adding to principal any income not so used.

Section 3.1 of Article Three of the 1993 trust provides:

> Upon the grantor's death, the successor trustee shall distribute the residue of the trust estate as follows:
>
> (a) The sum of TWENTY FIVE THOUSAND DOLLARS ($25,000.00) shall be paid by the successor trustee to the grantor's sister, MARIAN FRANCES DAVIS, if she survives the grantor.
>
> (b) The rest of the Trust Estate shall be transferred and delivered in equal shares to the grantor's two daughters, CAROL TAWNEY PENCKE and MARY MARTHA BENNETT, the

share of either of them who is deceased to go to her then living descendants, per stirpes or, if she has none, to be added to the share of the grantor's other daughter, or if she is deceased, to her descendants, per stirpes.

\* \* \* \* \* \* \*

(d) The interest of any beneficiary hereunder, including a remainderman, in Income or principal, shall not be subject to assignment, alienation, pledge, attachment or claim of creditors until after payment has actually been made by the successor trustee as hereinbefore provided.

Article Four of the 1993 trust provides for the powers of a trustee. Article Five of the 1993 trust names decedent's two daughters as successor trustees, and Article Five also provides that in the event that neither can serve as trustee, PNC Trust Company of Florida, N.A., shall serve as the successor trustee. Article Six of the 1993 trust provides for the grantor's powers, and Article Seven of the 1993 trust indicates that Florida law governs the trust. The 1993 trust was initially funded with securities with a total cost of $124,013 and a total market value of $207,637.73.

Decedent later married Evelyn Davis. On April 9, 1996, decedent executed a "First Codicil to Last Will" (codicil) and amended the trust by executing an "Amendment to Declaration of Trust of Ralph H. Davis" (amended trust)(the 1993 trust and the amended trust are collectively hereinafter sometimes referred to as the "testamentary trust").

The codicil modified the 1993 will and provided for the transfer of remainder of decedent's estate to the amended trust

upon his death.[1]  In the codicil, the decedent indicated that trustee of the amended trust would receive all of the residue of his estate.  The amended trust named Evelyn Davis as the successor trustee, whereupon surviving the decedent, she would become trustee of the amended trust.

The first paragraph of the codicil provides:

I hereby revoke paragraph Article Two, Section 2.1 of my Last Will and Testament dated February 24, 1993, and in its place, substitute the following:

> I give all of the rest, residue and remainder of my estate to the trustee under my Declaration of Trust Dated February 24, 1993 as amended April 9, 1996 or if my said declaration of trust are not in existence or are ineffective at the date of my death, to be held in trust on the same terms and conditions as specified in the trust declaration and amendment to trust declaration as they existed at the date of execution of this Codicil to my Last Will and Testament.  [Reproduced literally.]

The second paragraph of the codicil provides that all personal property found in decedent's residence shall remain in the surviving spouse's possession for her lifetime or so long as she uses the residence.  The third paragraph of the codicil revoked the appointment of PNC Trust Company of Florida, N.A., as alternate representative under the will, and nominated the Bank of Stockton, California, as the alternate representative.  The fourth paragraph confirmed and republished the provisions of the will not changed by the codicil.

---

[1]This arrangement is commonly referred to as a "pour-over" trust.

Section Two of the amended trust provides:

<u>Life Estate to Surviving Spouse of Trustor</u>: After the death of trustor survived by his spouse and during the lifetime of his surviving spouse, the trustee shall pay to or apply for the benefit of the surviving spouse, in quarter annual or more frequent installments, all of the net income from the trust estate as the trustee, in the trustee's reasonable discretion, shall determine to be proper for the health, education, or support, maintenance, comfort and welfare of grantor's surviving spouse in accordance with the surviving spouse's accustomed manner of living.

Section Three of the amended trust provides:

<u>Designation of Successor Trustees</u>: The first successor trustee of the Ralph H. Davis Trust shall be his spouse, Evelyn L. Davis.

In the event Evelyn L. Davis shall die, become incapacitated or otherwise be unable to administer the trust estate, then grantor's daughters, Carol Tawney Pencke and Mary Martha Bennett, or the survivor of them shall serve as co-trustees without bond.

Section Four of the amended trust provides:

<u>Guideline - Other Sources</u>: <u>Beneficiary</u>: In making distributions to grantor's surviving spouse, the trustee, in her reasonable discretion, may consider any other income or resources of the beneficiary known to the trustee and reasonably available.

Section Five of the amended trust provides:

<u>Invasion of Principal for Surviving Spouse - Narrow Standard</u>: If the trustee shall determine that the income from this trust and that the income and principal from the surviving spouse's own trust[2] shall be insufficient to maintain surviving spouse's health, support, and

---

[2]This trust is not directly in issue in the instant case, and shall sometimes hereinafter be referred to as the "Evelyn L. Davis trust". The trust in issue is the testamentary trust.

maintenance, the trustee may, after surviving spouse has exhausted all assets of her own trust, invade the principal of this trust for the benefit of surviving spouse, in the trustee's reasonable discretion. [Fn. ref. added.]

Section Six of the amended trust indicates that the appropriate Superior Court of the State of California shall have jurisdiction for all purposes over the testamentary trust. Section Nine expressly reaffirms and ratifies the 1993 trust, to the extent that it was not modified or amended by the amended trust.

On October 13, 1998, the estate filed a Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return with the Internal Revenue Service Center in Ogden, Utah. On the Federal estate tax return, the trustee made the election under section 2056(b)(7) for the entire trust amount.[3] The taxable estate was computed as follows:

```
Gross Estate
Add:
     Real Estate                            $0
     Stocks and Bonds                   129,363
     Mortgages, Notes, Cash               5,000
     Insurance on decedent's life         8,354
     Jointly owned property                   0
     Other miscellaneous property        24,500
     Transfers during decedent's life   554,812
     Powers of Appointment                    0
     Annuities                          458,794
```

---

[3]Estate did not elect out of sec. 2056(b)(7) treatment on Schedule M (Bequests, etc., to Surviving Spouse) of Form 706.

Less:

| | |
|---|---|
| Funeral expenses | 6,500 |
| Debts | 1,107 |
| Mortgages and Liens | 0 |
| Specific bequest to spouse | 573,216 |

Total allowable deductions 580,823

Taxable Estate 600,000

The total gross estate, as reflected on the estate's Form 706, is $1,180,823. The estate claimed a total marital deduction of $573,216,[4] and total deductions of $580,823 from the gross estate. The marital deduction was computed on Schedule M of the estate's Form 706, which primarily reflected the transfer of assets, including securities, life insurance policies, and individual retirement accounts, from the estate to the trust.

The estate reported a gross estate tax of $192,800 and claimed the maximum unified credit against estate tax for 1997, $192,800. Respondent determined that the claimed marital deduction should be reduced by $564,862, resulting in a reduction of the marital deduction from $573,216 to $8,354. Respondent determined that the insurance payment of $8,354 was the only item to qualify for the marital deduction because it was paid directly to the surviving spouse. On September 13, 2001, Respondent determined a deficiency in the estate's Federal estate tax of

---

[4]Section Five of Part Four of Form 706 reports that the testamentary trust received $586,670 from the estate.

$220,593 and issued a statutory notice of deficiency to the estate.

On October 1, 2001, Evelyn L. Davis filed a "NOTICE OF IRREVOCABLE EXERCISE OF GENERAL POWER OF APPOINTMENT", which provides:

> I, EVELYN DAVIS, the holder of the power to distribute income under the RALPH H. DAVIS DECLARATION OF TRUST DATED FEBRUARY 24, 1993 as amended April 9, 1996, pursuant to Paragraph 2 of said Amendment, do hereby irrevocably exercise my right to receive all of the income from this trust for the balance of my life.

> I do hereby exercise this instruction irrevocably, and hereby order that all of the income [be] paid to me quarter-annually or more frequently if necessary.

> This exercise is effective as of the date of death of my husband, RALPH H. DAVIS, pursuant to his instructions and intent as expressed to me.

## Discussion

Section 2001 imposes a tax on the transfer of the taxable estate of all persons who are citizens or residents of the United States at the time of death. The amount of the tax depends on the size of the taxable estate, sec. 2001(b), which is equal to the value of the gross estate less deductions. Sec. 2051; see Estate of Armstrong v. Commissioner, 119 T.C. 220 (2002). Section 2056(a) allows a marital deduction from a decedent's gross estate for the value of the property interests passing from the decedent to a decedent's surviving spouse. Estate of Clack v. Commissioner, 106 T.C. 131, 137 (1996).

A marital deduction generally is not allowable for a "terminable interest", which is a property interest that will terminate or fail "on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur".  Sec. 2056(b)(1); see <u>Estate of Clack v. Commissioner</u>, <u>supra</u>.  An interest in the nature of a life estate generally is not eligible for the marital deduction.  <u>Estate of Doherty v. Commissioner</u>, 95 T.C. 446 (1990), revd. on other grounds 982 F.2d 450 (10th Cir. 1992); see <u>Estate of Kyle v. Commissioner</u>, 94 T.C. 829 (1990); see also <u>Estate of Nicholson v. Commissioner</u>, 94 T.C. 666 (1990).

Section 2056(b)(5) is an exception to the section 2056(b)(1) terminable interest rule.  Section 2056(b)(5) provides:

SEC. 2056(b) Limitation in the Case of Life Estate or Other Terminable Interest.--

          *     *     *     *     *     *     *

(5) Life estate with power of appointment in surviving spouse.--In the case of an interest in property passing from the decedent, if his surviving spouse is entitled for life to all the income from the entire interest, or all the income from a specific portion thereof, payable annually or at more frequent intervals, with power in the surviving spouse to appoint the entire interest, or such specific portion (exercisable in favor of such surviving spouse, or of the estate of such surviving spouse, or in favor of either, whether or not in each case the power is exercisable in favor of others), and with no power in any other person to appoint any part of the interest, or such specific portion, to any person other than the surviving spouse--

(A) the interest or such portion thereof so passing shall, for purposes of subsection (a), be considered as passing to the surviving spouse, and

(B) no part of the interest so passing shall, for purposes of paragraph (1)(A), be considered as passing to any person other than the surviving spouse.

This paragraph shall apply only if such power in the surviving spouse to appoint the entire interest, or such specific portion thereof, whether exercisable by will or during life, is exercisable by such spouse alone and in all events.

To fit within the section 2056(b)(5) exception to the section 2056(b)(1) terminable interest rule, the surviving spouse must be entitled to all of the income from the testamentary trust (or from a specific portion thereof) for life and also have a general power of appointment over the testamentary trust. Sec. 2056(b)(5); see Estate of Walsh v. Commissioner, 110 T.C. 393, 398 (1998); see also Estate of Meeske v. Commissioner, 72 T.C. 73 (1979), affd. sub nom. Estate of Laurin v. Commissioner, 645 F.2d 8 (6th Cir. 1981). In Estate of Meeske v. Commissioner, supra at 78, this Court observed:

By its terms, section 2056(b)(5) provides a fivefold test for the deductibility of life estates coupled with powers of appointment: (1) The surviving spouse must be entitled for life to all the income from the entire interest or to all the income from a specific portion thereof. (2) The income must be payable annually or at more frequent intervals. (3) The surviving spouse must have a power to appoint the entire interest or such specific portion to either herself or her estate. (4) The entire interest or the specific portion must not be subject to a power in any other person to appoint any part to anyone other than the

surviving spouse. (5) The power in the surviving spouse (whether exercisable by will or during life) must be exercisable by her alone and in all events. [Emphasis added.]

Regulations promulgated pursuant to section 2056(b)(5) require the surviving spouse to be entitled for life to all of the income from either the entire interest or from a specific portion of the entire interest.[5] Sec. 20.2056(b)-5(a)(1), Estate Tax Regs.; see Estate of Wisely v. United States, 703 F. Supp. 474, 476 (W.D. Va. 1988). Moreover, the income must be payable to the surviving spouse annually or at more frequent intervals. Sec. 20.2056(b)-5(a)(2), Estate Tax Regs.; see Estate of Meeske v. Commissioner, supra at 78.

The surviving spouse's command over the income from the trust must be such that the income is "virtually hers". Estate of Wilson v. Commissioner, T.C. Memo. 1992-479, citing sec. 20.2056(b)-5(f)(8), Estate Tax Regs., which provides:

> In the case of an interest passing in trust, the terms "entitled for life" and "payable annually or at more frequent intervals," as used in the conditions set forth in paragraph (a)(1) and (2) of this section, require that under the terms of the trust the income referred to must be currently (at least annually; see paragraph (e) of this section) distributable to the spouse or that she may have such command over the income that it is virtually hers. Thus, the conditions in paragraph (a)(1) and (2) of this section are satisfied in this respect if, under the terms of the trust instrument, the spouse has the right exercisable annually (or more frequently) to require distribution to

---

[5]The estate has not contended that the surviving spouse's interest relates to a specific portion of the trust principal.

herself of the trust income, and otherwise the trust income is to be accumulated and added to corpus.

For purposes of the marital deduction and in considering the interests passing to a surviving spouse, this Court applies the law of jurisdiction under which the interest passes.  Estate of Bosch v. Commissioner, 387 U.S. 456 (1967); see Estate of Nicholson v. Commissioner, supra; see also Estate of Doherty v. Commissioner, supra; Estate of Bowling v. Commissioner, 93 T.C. 286 (1989); sec. 20.2056(b)-5(e), Estate Tax Regs.  In the instant case, the parties do not dispute that the applicable law is that of the State of California, and we therefore apply the law of the State of California.  Lassiter v. Commissioner, T.C. Memo. 2000-324.

In Estate of Dodge v. Stone, 491 P.2d 385, 394 (Cal. 1971) (citing Estate of Wilson v. Doolittle, 193 P. 581 (Cal. 1920)), the Supreme Court of California held that "The paramount rule in the construction of wills, to which all other rules must yield, is that a will is to be construed according to the intention of the testator as expressed therein, and this intention will be given effect as far as possible."  The intent of a testator is found by examining the document as a whole.  Estate of Heim v. Commissioner, 914 F.2d 1322, 1329-1330 (9th Cir. 1990), affg. T.C. Memo. 1988-433; see Estate of Rapp v. Commissioner, 140 F.3d 1211 (9th Cir. 1998), affg. T.C. Memo. 1996-10 (applying California law); see also Estate of Dodge v. Stone, supra; Estate

of Russell v. Quinn, 444 P.2d 353 (Cal. 1968).  In Estate of Heim

v. Commissioner, supra at 1329-1330, the Court of Appeals for the

Ninth Circuit observed:

> Furthermore, we cannot avoid the statutory directive
> that a "marital deduction gift" is "a gift that is
> intended to qualify for the marital deduction," Probate
> Code section 1030(d), and that "whether the will
> contains a marital deduction gift depends upon the
> intention of the testator at the time the will is
> executed."  Prob. Code sec. 1032(a) (West 1991).[6]

California Probate Code section 21522[7] acts to conform any

"power, duty, or discretionary authority" in a testamentary

instrument to comport with the requirements of a marital

deduction, if the instrument contains a marital deduction gift.

California Probate Code section 21520 (West 1991)[8] defines a

---

[6]Cal. Prob. Code secs. 1030, 1032 (repealed) are the predecessors to Cal. Prob. Code secs. 21520 and 21522 (West 1991).  Estate of Heim v. Commissioner, 914 F.2d 1322, 1329-1330 (9th Cir. 1990), affg. T.C. Memo. 1988-433.

[7]Sec. 21522. MARITAL DEDUCTION GIFTS

If an instrument contains a marital deduction gift:

(a) The provisions of the instrument, including any power, duty, or discretionary authority given to a fiduciary, shall be construed to comply with the marital deduction provisions of the Internal Revenue Code.

(b) The fiduciary shall not take any action or have any power that impairs the deduction as applied to the marital deduction gift.

(c) The marital deduction gift may be satisfied only with property that qualifies for the marital deduction.

[8]Cal. Prob. Code sec. 21520 provides:

(continued...)

marital deduction gift as a transfer that is intended to qualify for the marital deduction.  Accordingly, we inquire whether decedent evinced the intention that the property transferred to his testamentary trust would qualify for the marital deduction. Id.; see Estate of Heim v. Commissioner, supra.

In the instant case, we must interpret Section Two of the amended trust, which provides that the trustee shall pay:

> all of the net income from the trust estate as the trustee, in the trustee's reasonable discretion, shall determine to be proper for the health, education, or support, maintenance, comfort and welfare of grantor's surviving spouse in accordance with the surviving spouse's accustomed manner of living.

Pursuant to Section Two of the amended trust, the surviving spouse's right to receive income is significantly restricted.  In determining the appropriate amount of income to distribute to the surviving spouse, Section Two of the amended trust charges the trustee to consider, in the trustee's reasonable discretion, the surviving spouse's health, education, support, maintenance,

---

[8](...continued)
SEC. 21520. DEFINITIONS.--

  *    *    *    *    *    *    *

(a) "Marital deduction" means the federal estate tax deduction allowed for transfers under Section 2056 of the Internal Revenue Code or the federal gift tax deduction allowed for transfers under Section 2523 of the Internal Revenue Code.

(b) "Marital deduction gift" means a transfer of property that is intended to qualify for the marital deduction.

comfort, and welfare, in light of her accustomed manner of living.

The expression, "in accordance with the surviving spouse's accustomed manner of living" modifies and limits the expression that precedes it: "all of the net income from the trust estate as the trustee, in the trustee's reasonable discretion, shall determine to be proper for the health, education, or support, maintenance, comfort and welfare".  In Estate of Ellingson v. Commissioner, 964 F.2d 959, 964-965 (9th Cir. 1992), revg. 96 T.C. 760 (1991), the Court of Appeals for the Ninth Circuit, the circuit to which any appeal of the instant case would lie, stated that,

> the language used by the Nicholson trust [in Estate of Nicholson v. Commissioner, 94 T.C. 666 (1990)]--'usual and customary standard of living'--is much narrower and more specific than that used in this case--'best interests.'  Interpreting the Nicholson trust as qualifying for the QTIP deduction would have required the Tax Court to 'rewrite the trust instrument.'

The "usual and customary standard of living" clause under consideration in the instant case is analogous to the clause in Estate of Nicholson v. Commissioner, supra, and distinguishable from the "best interests" clause directly considered by the court in Estate of Ellingson v. Commissioner, supra.  The language in the amended trust is more restrictive than the "best interests" language in the trust in Estate of Ellingson v. Commissioner, supra.  The use of the word "comfort" in the amended trust is

limited by the expression, "in accordance with the surviving spouse's accustomed manner of living."  Accordingly, we interpret the language of the amended trust to mean that the surviving spouse does not have such "command over the income that it is virtually hers".  See sec. 20.2056(b)-5(f)(8), Estate Tax Regs.[9] In the instant case, Section Four of the amended trust provides that the trustee, in exercising reasonable discretion, may consider "any other income or resources of the beneficiary known to the trustee and reasonably available."[10]  In the instant case, Section Two of the amended trust limits the surviving spouse's entitlement to income without using the term "best interests". Moreover, in the instant case, the clause under consideration is much narrower and more specific than the "best interests" clause considered by the court in Estate of Nicholson v. Commissioner, supra.  We conclude that the foregoing limitations prevent the surviving spouse from being entitled to the entire income from the trust.

Moreover, the surviving spouse's role as sole trustee under the trust does not assure her the requisite control over the

---

[9]The court in Estate of Ellingson v. Commissioner, 964 F.2d 959 (9th Cir. 1992), revg. 96 T.C. 260 (1991), concluded that to effectuate the decedent's intent, paying the surviving spouse such amount of the income necessary for her "best interests" meant paying her all of the trust income.

[10]In the instant case, the decedent did not include in the amended trust the "best interests" language that appeared in the 1993 trust.  Article One, Sections 1.1 and 1.2 of the 1993 trust were amended by Section Two of the amended trust.

trust income for life, because, by the terms of the amended trust, decedent's daughters could become sole or cotrustees of the trust, in the event of the surviving spouse's resignation or her incapacity to serve as a trustee. Estate of Ellingson v. Commissioner, supra at 962 (citing Estate of Kyle v. Commissioner, 94 T.C. 829 (1990)). Additionally, unlike the "Marital Deduction Trust" in Estate of Ellingson v. Commissioner, supra, there is no language in the amended trust which explicitly refers to a marital deduction under section 2056. Accordingly, we conclude that the decedent did not intend to grant the surviving spouse the entire income interest for life from the surviving spouse's interest in the estate.

We also consider whether the amended trust qualifies for the section 2056(b)(5) exception to the terminable interest rule. In order to qualify for the exception, the surviving spouse must have the sole power to appoint her entire interest, exercisable by her alone and at all events, with no power in any other person to appoint any part of her interest to anyone but the surviving spouse. Sec. 2056(b)(5); see sec. 20.2056(b)-5(g)(1) and (3), Estate Tax Regs. Section 20.2056(b)-5(g)(3), Estate Tax Regs., provides:

> (3) A power is not considered to be a power exercisable by a surviving spouse alone and in all events as required by paragraph (a)(4) of this section if the exercise of the power in the surviving spouse to appoint the entire interest or a specific portion of it to herself or to her estate requires the joinder or

consent of any other person.  * * *  Likewise, if there are any restrictions, either by the terms of the instrument or under applicable local law, on the exercise of a power to consume property (whether or not held in trust) for the benefit of the spouse, the power is not exercisable in all events.  Thus, if a power of invasion is exercisable only for the spouse's support, or only for her limited use, the power is not exercisable in all events.  In order for a power of invasion to be exercisable in all events, the surviving spouse must have the unrestricted power exercisable at any time during her life to use all or any part of the property subject to the power, and to dispose of it in any manner, including the power to dispose of it by gift (whether or not she has power to dispose of it by will).  [Emphasis added.]

Section 2056(b)(5) requires the surviving spouse to "receive an unlimited power to appoint the underlying property to himself or to his estate."  Estate of Smith v. Commissioner, 79 T.C. 974, 977 (1982)(citing Estate of Field v. Commissioner, 40 T.C. 802 (1963)); see Estate of Meeske v. Commissioner, 72 T.C. 73 (1979); see also Estate of May v. Commissioner, 32 T.C. 386 (1959), affd. 283 F.2d 853 (2d Cir. 1960); sec. 20.2056(b)-5(d), Estate Tax Regs.  The power must be exercisable alone and in all events. Estate of Brantingham v. United States, 631 F.2d 542 (7th Cir. 1980); see Estate of May v. Commissioner, supra.

In deciding whether decedent's trust created a power of appointment over the entire interest, we must consider whether the trust documents created a general power of appointment under California law.  Estate of Robertson v. United States, 310 F.2d 199 (5th Cir. 1962); Estate of Opal v. Commissioner, 54 T.C. 154 (1970), affd. 450 F.2d 1085 (2d Cir. 1971); Estate of Comer v.

Commissioner, 31 T.C. 1193 (1959); Estate of Boydstun v. Commissioner, T.C. Memo. 1984-312.  Unless the language used by the testator in creating the trust creates an unambiguous general power of appointment, "the ascertainment of the breadth of the trustee's power is to be ascertained with reference to the intent of the trust's creator."  Estate of Smith v. Smith, 172 Cal. Rptr. 788, 792 (Ct. App. 1981).

A power of appointment is not considered a general power of appointment if it is limited by an ascertainable standard. Estate of Nunn v. Beverly Hills Natl. Bank, 518 P.2d 1151 (Cal. 1974).  A power of appointment that is limited by an ascertainable standard relating to the person's health, education, support, or maintenance is not a general power of appointment.  Cal. Prob. sec. 611(b); see Estate of Nunn v. Beverly Hills Natl. Bank, supra (applying a predecessor of sec. 611(a) and (b) (West 2002)); see also Estate of Smith v. Smith, supra.  Section Five of the amended trust permits invasion of the principal of the trust only if the Evelyn L. Davis trust is insufficient to provide for the surviving spouse's health, support and maintenance.  In the instant case, we conclude that the trustee may only invade the principal of the trust for the surviving spouse's health, support, and maintenance, as the power to invade is predicated on those needs, and the trustee may only appoint the principal to meet those needs.  Furthermore, the

title of Section Five of the amended trust, "Invasion of Principal for Surviving Spouse-Narrow Standard", indicates that decedent did not intend to provide the surviving spouse with an unrestricted power of appointment. We conclude that the trustee's power to invade the principal is not exercisable in all events, and, accordingly, the trustee's power is not a qualifying power of appointment for purposes of section 2056(b)(5). See sec. 20.2056(b)-5(g)(3), Estate Tax Regs. Consequently, we hold that the testamentary trust fails to qualify for the section 2056(b)(5) exception to the terminable interest rule.

Petitioner contends that Section Two of the amended trust created a general power of appointment over the income from the testamentary trust, under section 2041 and section 20.2041-1(c)(1) and (2), Estate Tax Regs., and that a general power of appointment under section 2041 is sufficient to qualify the surviving spouse's interest income in the testamentary trust for section 2056(b)(5) treatment, relying on Sec. Peoples Trust Co. v. United States, 238 F. Supp. 40, 51 (W.D. Penn 1965). The requirements of section 2041 and section 2056(b)(5) are distinct. A power of appointment may not be broad enough to qualify under section 2056 even though it qualifies as a general power of appointment for purposes of section 2041. Estate of Brantingham v. United States, supra (no indication that section 2041 and section 2056 apply in pari materia); see Estate of May v.

Commissioner, 283 F.2d 853 (2d Cir. 1960); see also Estate of Duvall v. Commissioner, T.C. Memo. 1993-319; Condon Natl. Bank v. United States, 349 F. Supp. 755 (D. Kan. 1972).

Section Two of the amended trust may have been sufficient to create a power of appointment for purposes of section 2041,[11] but we have found that the terms of that provision, and other provisions relevant in discerning testator's intent, failed to satisfy the conditions set forth in section 2056(b)(5) because the surviving spouse is not entitled to all of the income from the property and because her power to invade the trust corpus is not exercisable at all events.  Sec. 2056(b)(5); see also Estate of Meeske v. Commissioner, supra; Estate of Lassiter, T.C. Memo. 2000-324.

We also consider whether the trust qualifies for the section 2056(b)(7) qualified terminable interest property exception to the section 2056(b)(1) terminable interest rule.  Section 2056(b)(7) was enacted as part of the Economic Recovery Tax Act of 1981, Pub. L. 97-34, sec. 403(d)(1), 95 Stat. 172, 302.  Prior to 1981, a life estate without a power of appointment was considered a terminable property.  Estate of Clack v. Commissioner, 106 T.C. 131 (1996); see Estate of Nicholson v. Commissioner, 94 T.C. 666 (1990); see also Estate of Higgins v.

---

[11]We do not consider whether a power of appointment was created by the trust document, for purposes of sec. 2041, because that issue is not directly before us.

<u>Commissioner</u>, 91 T.C. 61 (1988), affd. sub nom. <u>Manufacturers</u>

<u>Natl. Bank v. Commissioner</u>, 897 F.2d 856 (6th Cir. 1990). That

result was changed by section 2056(b)(7), which provides:

> (7) Election with respect to life estate for surviving spouse.--
>
>> (A) In general.--In the case of qualified terminable interest property--
>>
>>> (i) for purposes of subsection (a), such property shall be treated as passing to the surviving spouse, and
>>>
>>> (ii) for purposes of paragraph (1)(A), no part of such property shall be treated as passing to any person other than the surviving spouse.
>>
>> (B) Qualified terminable interest property defined.-- For purposes of this paragraph--
>>
>>> (i) In general.--The term "qualified terminable interest property" means property--
>>>
>>>> (I) which passes from the decedent,
>>>>
>>>> (II) in which the surviving spouse has a qualifying income interest for life, and
>>>>
>>>> (III) to which an election under this paragraph applies.
>>>
>>> (ii) Qualifying income interest for life.--The surviving spouse has a qualifying income interest for life if--
>>>
>>>> (I) the surviving spouse is entitled to all the income from the property, payable annually or at more frequent intervals, or has a usufruct interest for life in the property, and
>>>>
>>>> (II) no person has a power to appoint any part of the property to any other person other than the surviving spouse.

For the surviving spouse's income interest in the trust to

qualify as qualified terminable interest property under section 2056(b)(7)(B),[12] the surviving spouse must be entitled to the entire income interest for life in the property.  Sec. 2056(b)(7)(B)(ii)(I); see Estate of Nicholson v. Commissioner, supra.  The regulations under section 20.2056(b)-5(f), Estate Tax Regs., apply in determining whether the surviving spouse is entitled to the entire income interest from the testamentary trust for purposes of section 2056(b)(7)(B)(ii)(I).  Lassiter v. Commissioner, supra; see sec. 20.2056(b)-7(d)(2), Estate Tax Regs.[13]  Having concluded above that the decedent's surviving spouse is not entitled to all of the income for life from the amended trust, we also conclude that in the instant case the requirements under section 2056(b)(7) have not been satisfied.

---

[12]The parties do not dispute that a sec. 2056(b)(7) election was made.

[13]Sec. 20.2056(b)-7(d)(2), Estate Tax Regs., provides:

> Entitled for life to all income.  The principles of §20.2056(b)-5(f), relating to whether the spouse is entitled for life to all of the income from the entire interest, or a specific portion of the entire interest, apply in determining whether the surviving spouse is entitled for life to all of the income from the property regardless of whether the interest passing to the spouse is in trust.

Based on the foregoing, we find that the amended trust property in the instant case does not qualify for either the section 2056(b)(5) or the section 2056(b)(7) exception to the section 2056(b)(1) terminable interest rule.

We have considered all of the contentions and arguments of the parties that are not discussed herein, and we find them to be without merit, irrelevant, or moot.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.